182 So.2d 814 (1966)
Thomas J. KLIEBERT
v.
SOUTH LOUISIANA PORT COMMISSION.
No. 2205.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1966.
Rehearing Denied February 21, 1966.
Writ Refused March 11, 1966.
*815 Thomas J. Kliebert, Gramercy, plaintiff-appellant, in pro. per.
McDonald & Buchler, Willis C. McDonald, Metairie, and Lemle & Kelleher, Murphy Moss, James A. Churchill, New Orleans, for defendant-appellee.
Before McBRIDE, YARRUT and BARNETTE, JJ.
BARNETTE, Judge.
Plaintiff filed his suit as a taxpayer, elector, and resident of St. John the Baptist Parish seeking a preliminary and a final injunction prohibiting the South Louisiana Port Commission from issuing $8,500,000 worth of bonds pursuant to a resolution of the Commission. The suit also sought to have declared null an agreement between the Commission and Bayside Warehouse Company, a Texas corporation, and all proceedings of the Commission relative to the agreement. By stipulation the hearing on the preliminary injunction and the trial on *816 the merits on the final injunction were consolidated. There was judgment on the merits for defendant and plaintiff's suit was dismissed.
The South Louisiana Port Commission was created by a self-operative Constitutional amendment[1] in 1960 for the purpose of regulating and administering public port facilities in the Parishes of St. Charles, St. John the Baptist, and St. James. The amendment granted certain specific powers and authority to the Commission, and the basis of plaintiff's suit is his contention that the Commission went beyond this grant of authority in the actions of which he complains.
In March 1965 defendant entered a negotiated agreement with Bayside whereby Bayside was to sell certain riverfront land to defendant, and defendant was to build a grain storage elevator on the property which it would then lease to Bayside. In order to finance the purchase of the property and the construction of the elevator, defendant was to issue bonds in the amount of $8,500,000. The bonds were to be retired with revenues to be received from the leased facility.
Plaintiff's contentions are that the Commission was without authority to pledge the full faith and credit of the State in issuing the bonds, that the proposed issue would violate other provisions of the Constitution, and that the agreement with Bayside violates the competitive bidding statute.[2]
The question of the Commission's authority to pledge the full faith and credit of the State on the bonds turns on a determination of the Commission's status in regard to the organization of the State government. The case of Miller v. Greater Baton Rouge Port Comm'n, 225 La. 1095, 74 So.2d 387 (1954), is particularly apposite to the instant case. There, plaintiffs were seeking to prevent the sale of bonds and notes by the Greater Baton Rouge Port Commission on the grounds that no provision had been made for funds to pay the obligations thus created and that the proposed sale violated certain Constitutional provisions. The Supreme Court held that the Commission was an executive department of the State and that the bonds and notes it issued were primarily the obligations of the State.
If the South Louisiana Port Commission is the same type of governmental entity as the Greater Baton Rouge Port Commission that is, an executive departmentit clearly has the authority, for the reasons given by the Supreme Court in the Miller case, to issue bonds on the general credit of the State. The Baton Rouge Commission was established by a Constitutional amendment[3] the language of which, in its pertinent provisions, is almost exactly the same as the language of the amendment which created the South Louisiana Port Commission.
Plaintiff has been able to point to only one distinction on which to base his contention that the South Louisiana Port Commission is not an executive department of the State and that the Miller case is not decisive of the question here. In the joint resolution of the Legislature proposing the establishment of the Baton Rouge Commission, Act No. 9 of 1962, that Commission is referred to as "a new Executive Department". Act No. 633 of 1960, which proposed the South Louisiana Port Commission, referred to it by name only and used no term which might indicate its prospective status in the structure of the State government. We doubt that the difference between the two resolutions can be viewed as an indication of an intent on the part of the drafters to withhold the status of executive department from the Commission, especially in light of the weight of evidence to the contrary. The composition and powers of the two Commissions are essentially the same. They were both established by *817 amendments to Article 6 of the Constitution. There is no significant difference between them apart from their membership and territorial jurisdiction. There is direct evidence in the South Louisiana Port Commission amendment of an intent to create an Executive Department in the following provision: "* * * The Commission may * * * upon terms and conditions mutually agreeable, utilize the services of the other executive departments of the State." (Emphasis added.) In addition, the amendment provides that title to all property acquired by the Commission shall vest in the State. It is our conclusion that the South Louisiana Port Commission is an executive department of the State.
There is one other difference in the two amendments which plaintiff contends prevents the Commission from pledging the credit of the State in issuing bonds. Article 6, Section 29, of the Constitution provides that the bonds issued by the Greater Baton Rouge Port Commission "shall constitute, first, a general obligation of the Commission, and secondly, the full faith and credit of [the parishes comprising the jurisdiction of the Commission], and thirdly, the State of Louisiana shall be and are hereby pledged." (Emphasis added.) Article 6, Section 33.1, provides that the bonds of the South Louisiana Port Commission shall constitute a general obligation of the Commission and also pledges the full faith and credit of the parishes involved, but it omits the phrase relative to the State indicated by the emphasis supplied in the provision quoted above.
Plaintiff argues that the omission of a pledge of the full faith and credit of the State indicates an intent on the part of the drafters not to bind the State. But the holding of the Supreme Court in the Miller case, supra, that the bonds of the Greater Baton Rouge Port Commission were primarily obligations of the State, rendered the specific reference to the State "thirdly", meaningless. Indeed, as written, purporting to make the State liable in a tertiary position, the provision was misleading, and the rules of good legislative draftsmanship required omitting it from the later amendment which set up the South Louisiana Port Commission.[4]
Appellant contends that the lease agreement and proposed bond issue violate other sections of the Constitution. Article 4, Section 2, prohibits the legislature from issuing bonds or contracting debt on behalf of the State except for the purpose of repelling invasion or suppressing insurrection. The proposed bond issue before us is not authorized by mere act of the Legislature but by Constitutional amendment to Article 6, by the addition of Section 33.1. This amendment to the Constitution, specifically authorizes the Commission to issue bonds. Clearly, a constitutional amendment cannot be attacked as unconstitutional as a mere act of the Legislature attempting the same thing might have been under Article 4, Section 2.
The other contentions urged by appellant in regard to violations of Article 4, Section 12, and Article 3, Section 35, were also urged in the Miller case, supra, and were rejected by the Supreme Court. We see no need to discuss them further here.
Plaintiff's final attack on the agreement between defendant and Bayside is based on an alleged violation of LSA-R.S. 41:1211 et seq., the competitive bidding statute. He contends that the agreement is illegal and invalid because it was negotiated rather than being submitted for public bidding, and because the lease with its renewal options would be for 40 years rather than *818 for the statutory maximum of 10 years for the lease of public land. But the Constitutional grant of authority to the Commission is greater than the scope of the statute. The Commission is expressly authorized to lease for periods up to 40 years. In addition, the Commission is empowered to construct and acquire structures useful for commerce in its area. It would be an unwarranted restriction on the operation of the Commission to require it to submit an intricate agreement of the type proposed here to the rigors of the competitive bidding statute. It must be concluded that the power granted to the Commission necessarily carried with it the implied authority to negotiate contracts consistent with its purpose. To hold otherwise would subvert the Constitutional mandate by applying inferior statutory law. See Hotard v. City of New Orleans, 213 La. 843, 35 So.2d 752 (1948).
For the reasons assigned above, the judgment of the district court dismissing plaintiff's petition is affirmed, at plaintiff's cost.
Affirmed.
NOTES
[1] LSA-Const. Art. 6, § 33.1 (1960).
[2] LSA-R.S. 41:1211 et seq.
[3] LSA-Const. Art. 6, § 29 (1952).
[4] There is other evidence of an awareness of the Miller decision in the later amendment. For example, plaintiffs contended in the Miller case, supra, that the earlier amendment, Section 29, was not self-operative and required enabling legislation. A specific declaration was included in Section 33.1 that it was self-operative.