327 So.2d 495 (1976)
Henry ARNOLD and John F. Robbert
v.
The BOARD OF LEVEE COMMISSIONERS OF the ORLEANS LEVEE DISTRICT et al.
No. 7182.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1976.
Rehearing Denied March 16, 1976.
Writ Refused April 27, 1976.
*496 Garon, Brener & McNeely, John F. Robbert and Luke Fontana, New Orleans, for plaintiffs-appellants.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John W. Haygood and Lucius F. Suthon, New Orleans, for The F. Edward Hebert Foundation, defendantappellee.
Richard J. McGinity, New Orleans, for The Bd. of Levee Commissioners of the Orleans Levee Dist., defendant-appellee.
Before REDMANN, STOULIG and BEER, JJ.
STOULIG, Judge.
Plaintiffs, Henry Arnold and John F. Robbert, filed a taxpayers' suit to enjoin the F. Edward Hebert Foundation (Foundation) from building a museum and library on lakefront property in the City of New Orleans owned by the Orleans Parish Levee Board (Board). Plaintiffs contend the defendant board and the defendant foundation, a private non-profit corporation, violated four laws in entering into a lease agreement whereby the Foundation would lease at an annual rental of $1 per *497 acre[1] Board property on which a public building named after Congressman Hebert would be erected. Under its provisions, the Board is obligated at the termination of the lease (30 years hence or on the contingency of Mr. Hebert's death) to maintain the museum at public expense. Defendants' exception of no cause of action was maintained and plaintiffs have appealed.
In essence plaintiffs petitioned to nullify the lease because (1) it was executed without advertising for bids, contrary to L.R.S. 41:1211 et seq.; (2) it contemplates naming a building on State owned land after a living person, contrary to L.R.S. 14:316; (3) it was signed without first holding public hearings and without authorization of the City Council in violation of Comprehensive Zoning Ordinance (1970), Art. 5, § 1.4(18); and (4) it requires construction of a museum on a substandard site in violation of the zoning ordinance.
In deciding these exceptions, we deem the allegations of fact in plaintiffs' petition as true.[2] These quoted allegations set forth the facts upon which plaintiffs rest their claim the Public Lease Law was violated:

"6
"In or about January, 1975, the Levee Board entered into a contract of lease with the Hebert Foundation whereby a certain portion of State owned land in the vicinity of the Lake Oaks Subdivision was leased by the Levee Commission to the Hebert Foundation for a term of 30 years. A copy of said lease is attached hereto and made a part hereof.
"7
"Petitioners allege on information and belief that the lease was privately negotiated and concluded between the parties thereto and not advertised or publically bid as required by law, more particularly, La.R.S. 41:1211 et seq."
The pertinent part of Section 41 of the Revised Statutes regulating public lands owned by the State is found in Chapter 10, entitled "Leases of Public Lands." The terms and conditions under which a public agency may lease property of the State is set forth in this part. L.R.S. 41:1211 defines as a "* * * `lessor' * * * all * * * branches, departments or agencies of the state, or any school district, levee district, * * * or other unit or institution, deriving its authority and powers from the sovereignty of the state." (Emphasis added.) L.R.S. 41:1212 permits the agency to lease property over which it has title for "any * * * legitimate purposes whatsoever * * *." L.R.S. 41:1213 gives any person the right to apply for a lease of public lands and outlines the procedure to follow, while L.R.S. 41:1214 grants the agency authority to initiate lease negotiations. In both instances the proposed lease must be advertised in the official journal of the parish where the land is located "* * * setting forth a description of the land to be leased, the time when the bids therefor will be received, and a short summary of the terms and conditions and purposes of the lease to be executed * * *."
The Public Lease Law originated with Acts 1940, No. 70. The legislature, cognizant of the propensity of some elected officials to exercise a "spoils system" approach to leasing state owned property, moved to curb abuses by introducing the public bid concept to leasing as it had previously *498 done in the area of public contracts.[3] In Ellis v. Acadia Parish School Board,[4] the Supreme Court noted a threefold purpose for the Public Lease Law, namely:
"* * * The object and intent of the Legislature in adopting Act No. 170 of 1940 was to give all persons a chance to bid on leases of the public lands, to prevent boards and other authorities from favoring one person over others, and to produce to the various agencies of the State named therein larger revenues by requiring competitive bidding for the leases. * * *" 29 So.2d at 465.
In the past when certain agencies have been challenged in court for failure to comply with its provisions prior to negotiating a lease, the defense raised is their powers, conferred by special statute, cannot be curbed, controlled or in any way modified by the general provisions of L.R.S. 41:1211 et seq. And so it is in this case. Defendants' position on the public lease issue is that its power to lease, conferred by LSA-Const. Art. 16, § 7(h) (1921), gives the Board absolute power to negotiate any lease on any terms and conditions it deems proper. We quote that part of the 1921 Constitution that the Board urges confers unrestricted authority:
"(h). State land grants. To enable the said Board to perform the work herein provided for and to assist in defraying the cost and expenses thereof, and to carry out the purposes of existing laws and this Article of the Constitution, the State of Louisiana hereby grants and releases to said Board the title of the State in and to all public property necessary for the purposes hereof and all lands reclaimed or filled in within any levee embankments, slopes, retaining walls, sea walls, and breakwaters constructed hereunder and in and to all lands lying within the territorial limits of said project and hereby releases said land from any public trust or dedication and said Board shall have jurisdiction, power and authority to sell and lease, or otherwise dispose of such portion of the lands reclaimed and other property acquired for the purpose of said improvement, except the lands herein required to be dedicated by it for public use, together with any building, improvements or other works constructed thereon, under such terms and conditions and by such methods as said Board may deem proper * * *."
LSA-Const. 1974, Art. 14, § 16(A)(12) changed the partially quoted amendment to the status of statute. We note this in passing because plaintiffs and defendants both argue it is significant to support their respective positions. From the standpoint of the result we reach, the change is academic.
In any event, we cannot accept defendants' contention the words, "* * * said Board shall have * * * power * * * to * * * lease * * * under such terms and conditions and by such methods as said Board may deem proper * * *," exempt it from compliance with L.R.S. 41:1211 et seq. We find the situation before us analogous to that considered by the Supreme Court in Hall v. Rosteet,[5] which held the Calcasieu Parish Police Jury could not lease a public airfield, under the jurisdiction of an airport authority, without first complying with the Public Bid Law. The Airport Authority, created pursuant to L.R.S. 2:601 et seq. is regulated by the Uniform Airports Law (L.R.S. 2-131 et seq.). L.R.S. 2:135(3) permits *499 the local Airport Authority to lease property for a term not exceeding 25 years to private parties and is silent as to competitive bidding. The Police Jury contended this special law exempted it from the applicability of the general public lease law, because it did not contain the advertisement for bids proviso and because it was permitted to execute leases for a maximum 25year period, whereas L.R.S. 41:1211 et seq. limits the duration to 10 years. Where the laws were in conflict (on duration), the Court held the special law superceded the general provision, but where they could be construed harmoniously, both were applied. Thus the Police Jury was enjoined from negotiating private leases without first complying with the Public Lease Law.
One of the principles enunciated by Hall is that the revised statutes were enacted by the legislature as a complete body of law adopted as a whole, thus all provisions should be read together and reconciled where possible. The statutes in question were all part of this act. In the case before us, we are dealing with what was a constitutional grant of power at the time L.R.S. 41:1211 was enacted; however the difference in status between LSA-Const. 1921 Art. 16, § 7(h) and the revised statutes do not change the result. L.R.S. 41:1211 expressly provides levee districts are included within its purview as one of the agencies "* * * deriving its authority and powers from the sovereignty of the state." A constitutional grant of power has as its source the sovereignty of the state, just as the revised statutes do, and in the absence of conflict between these enactments, both must be recognized. Thus, the Public Lease Law is inoperative only if the constitutional or statutory grant of power may be construed to expressly exempt the agency from its operation.
Defendants argue that L.R.S. 38:1244 and 1246, quoted below, manifest a legislative intent to exempt it from control of the Public Bid Law:
"All public levees and embankments constructed by the Board of Commissioners of the Orleans Levee District in and on the water of Lake Pontchartrain and shore adjacent thereto, full charge and control of the levees and embankments shall vest in the board until otherwise provided by law. The board shall have plenary powers for the maintenance of the property including the power to sell or lease any parts thereof, as in the judgment of the board, may not be necessary for public purposes, under the conditions and restrictions which the board may impose." L.R.S. 38:1244
and
"The Orleans Levee Board is hereby requested and authorized to provide space at the New Orleans Lakefront Airport for hangars for small private airplanes and to make available for lease and to lease by public advertisement and bidding such space for construction of such hangars by the lessees, or the Orleans Levee Board, in its discretion, may provide the space and hangars for such purpose in any other manner by public advertisement and bidding. Such space and hangars shall conform in all respects with the rules of the Federal Aeronautics Administration. The Orleans Levee Board shall prescribe the necessary rules and regulations to carry out the purposes of this section." L.R.S. 38:1246
Section 1244 originated with Acts 1916, No. 202, § 1 and was reenacted verbatim in the Revised Statutes of 1950. In addition to its amenability to being harmoniously construed with the Public Lease Law, we find no logical basis for holding the quoted language, written 24 years before the Public Lease Law was passed, expresses special permission for the Board to negotiate leases without compliance with L.R.S. 41:1211.
While Section 1246 enacted in 1968 does expressly require hangar space to be publically advertised and awarded after competitive *500 bidding, we cannot assign the import to this language urged by defendants, namely, that the omission of such language in the original act drafted in 1916 is tantamount to a sanction to be exempt from the general lease law concerning public land. The Hall rationale of applying all statutes that do not conflict should prevail.
Finally, on the public lease law issue, defendants rely on this language from Hebert v. Police Jury of West Baton Rouge Parish:[6]
"The third point as to the alleged violation of the Public Lease Law (R.S. 41:1211 to 41:1221, inclusive) and the alleged violation of the Public Contract Law (R.S. 38:2211 to 38:2217, inclusive) are likewise without merit. Recent decisions of our courts have clearly held that the provisions of the Public Lease Law are not applicable to lease agreements entered into by public bodies pursuant to express constitutional or statutory provisions. Kliebert v. South Louisiana Port Commission [La.App.], 182 So.2d 814 (1966); Wright v. Lake Charles Harbor and Terminal Dist. [La.App.], 188 So.2d 449 (1966). See also LeBlanc v. Police Jury of the Parish of Rapides, supra. * * *" 200 So.2d at 891.
In Kliebert,[7] the right of the South Louisiana Port Commission to issue bonds for funds to construct warehouses and then privately negotiate for their leasing was put at issue. Under LSA-Const. 1921 Art. 6, § 33.1, the authority was created and authorized, inter alia, to lease facilities administered by it. In holding the Public Lease Law did not apply because the constitutional grant of power was express, the court indicated this result was influenced because the type of lease at issue was too complex to be amenable to public advertisement and bid laws. (Ct. New Orleans Transfer Co., Inc. v. City of New Orleans, 284 So.2d 362 (La.App. 4th Cir. 1973), requiring public bidding on a complex waste processing and disposal contract.)
The distinction between Kliebert and this case is apparent. The lease in question was one connected with activities the Port Commission was created to administer, while the lease before us has no relation to the primary function of the Orleans Parish Levee Board. The court might reasonably construe the language of LSA-Const. 1921 Art. 6, § 33.1 to grant express authority to lease port facilities and thus exempt that commission from compliance with the Public Lease Law, particularly after finding as a fact that "it would be an unwarranted restriction on the operation of the Commission to require it to submit an intricate agreement of the type proposed here to the rigors of the competitive bidding statute."
The Wright[8] case cited in Hebert need not be distinguished because the court avoided the issue of the applicability of the Public Lease Law by finding as a fact the agreement before it was not a lease.
We conclude that the lease negotiated between defendants is valid only if consummated after compliance with the provisions of L.R.S. 41:1211 et seq. While defendants concede the lease was privately negotiated, our adjudication necessarily is limited to the record before us and we can only hold that the petition does state a cause of action in this respect.
Before passing to the second legal issue raised by plaintiffs' petition, we note that appellants argued in brief the $1-perannum-per-acre consideration recited in the lease is insufficient to support a valid contract of lease and cited Northeast La. Detach. of Mar. C. L. v. City of Monroe, 253 So.2d 107 (La.App. 2d Cir. 1971), in support of this argument. Because the petition has no factual allegations setting forth a deficiency in the lease for inadequate *501 consideration, we cannot consider this argument on appeal from a judgment maintaining an exception of no cause of action.
The second ground upon which plaintiffs allege the lease is null is stated in Allegation 14 of the petition, which we quote:
"The defendants have entered into a lease agreement for a part of a public park and public recreation area owned by the State of Louisiana which has been constructed and maintained with public funds for purpose of honoring F. Edward Hebert. Furthermore, the defendants' lease agreement is designed to expire upon the death of F. Edward Hebert or at the end of thirty years, whichever is sooner, and at the termination of the lease the Levee Board will become obligated to maintain and operate the library and museum in perpetuity at the taxpayers' expense. The defendants' project is, therefore, a direct violation of and a futile circumvention of La.R.S. 14:316 relative to the naming of public buildings in honor of living persons."
In reviewing the petition and the attached lease, there is no indication the proposed library-museum will bear the name of F. Edward Hebert. As we construe L.R.S. 14:316, the prohibition is limited to the naming of a public building in honor of a living person. While both briefs indicate the intent of the parties is to name the building in honor of Congressman Hebert, we must limit our review to the wellpleaded facts of the petition. As the record is now constituted, there is no allegation of fact that the proposed construction will be named for F. Edward Hebert; therefore, a discussion of whether such action falls within the prohibition of L.R.S. 14:316 or whether an injunction may issue to restrain violation of this criminal statute would be premature. With respect to this allegation, the exception was properly maintained.
The petition sets forth two alleged violations of the Comprehensive Zoning Ordinance of the City of New Orleans as the third and fourth ground for nullifying the lease in Allegations 10 through 13, which we need not quote because plaintiffs apparently have acquiesced in the judgment that dismissed them as having stated no cause of action. An exception maintained in the lower court and not put at issue by plaintiffs in the Court of Appeal is presumed abandoned.[9]
Appellants did argue to this court the property, previously dedicated by the Board to the City for public park purposes, could not be leased for the construction of a library without legislative consent. As with the inadequacy of consideration argument, the petition does not contain any factual allegation to put this point of law at issue and we will not pass on it.
Parenthetically, we comment that the proffer of proof submitted by defendants at the trial court's instruction is no more admissible in the trial of an exception than is testimony or other evidence tending to support or defeat the allegations of the petition. Trial of the exception must be limited to the allegations of fact contained in the petition and any attachments thereto.
For the reasons assigned, the judgment appealed from is annulled and this matter is remanded for further proceedings consistent with the views expressed herein; imposition of costs to await the final disposition of the matter.
Annulled and remanded.
REDMANN, Judge (concurring):
I agree that the allegations of noncompliance with the public lease law do state a cause of action and that we therefore must reverse. I do not join in the assertion, in obiter dicta, of theories under which we would not reverse.
NOTES
[1] The contract of lease provides for a total annual rental of $3.33 for the 31/3 acres leased.
[2] Burns v. Genovese, 254 La. 237, 223 So.2d 160 (1969).
[3] Acts 1926, No. 73 is the source of the present law requiring bids on government contracts that exceed a certain amount. As reenacted and amended it is now L.R.S. 38:2211.
[4] 211 La. 29, 29 So.2d 461 (1947).
[5] 247 La. 45, 169 So.2d 903 (1964).
[6] 200 So.2d 877 (La.App. 1st Cir. 1967).
[7] Kliebert v. South Louisiana Port Commission, 182 So.2d 814 (La.App. 4th Cir. 1966).
[8] Wright v. Lake Charles Harbor and Terminal Dist., 188 So.2d 449 (La.App. 3rd Cir. 1966).
[9] Sims v. Matassa, 200 So. 666 (La.App. 1st Cir. 1941).