366 So.2d 1321 (1978)
Henry ARNOLD and John F. Robbert
v.
The BOARD OF LEVEE COMMISSIONERS OF the ORLEANS LEVEE DISTRICT, Guy LeMieux, the F. Edward Hebert Foundation and Ernest A. Carrere, Jr.
Nos. 62385, 62453.
Supreme Court of Louisiana.
December 15, 1978.
*1323 John W. Haygood, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Metairie, for F. Ed. Hebert Foundation, defendant-respondent in No. 62453 and defendant applicant in No. 62385.
Richard J. McGinity, McGinity & McGinity, New Orleans, for Bd. of Levee Com'rs, etc. defendants-applicants in No. 62453 and defendants-respondents in No. 62385.
John F. Robbert, Garon, Brener & McNeely, New Orleans, for plaintiffs-respondents in Nos. 62385 and 62453.
DIXON, Justice.
Plaintiffs Henry Arnold and John F. Robbert, residents and taxpayers in Orleans Parish, filed a taxpayer's suit seeking declaratory and injunctive relief against the Orleans Levee Board and the F. Edward Hebert Foundation. The plaintiffs contended that a lease contracted between the Board and the Foundation, in which the Foundation was to lease at a nominal sum certain lakefront property belonging to the Board for the construction of a museum and a library named for Congressman Hebert, was in derogation of statutory prohibitions and municipal ordinances of the City of New Orleans.[1] The district court initially sustained the defendants' exception of no cause of action, but the Court of Appeal reversed the trial court on the ground that the Board was required to comply with the Public Iease Law, R.S. 41:1211 et seq., and remanded for further proceedings. 327 So.2d 495 (4th Cir. 1976).[2] Application was made to this court for review, but was denied because the judgment was not final. 330 So.2d 318 (La.1976).
On remand the district court heard the case on the merits pursuant to a written stipulation of facts in which the defendants admitted that the contract did not comply with the Public Lease Law. Following the reasoning of the appellate court, the court thereafter declared the lease null and void and issued a permanent injunction against the defendants. The Court of Appeal affirmed the district court judgment on the basis of its first opinion in the matter, which it held to be the law of the case. 359 So.2d 748 (4th Cir. 1978). Defendants applied separately for writs to this court. Writs were granted and the cases consolidated to review the decisions of the lower courts. 360 So.2d 1350 (La.1978).

*1324 Applicability of the Public Lease Law

An essential determination is the relationship of the Public Lease Law, R.S. 41:1211 et seq.,[3] to the operations of the Orleans Levee Board in specified parts of Orleans Parish. Article 16, § 7(h) of the Louisiana Constitution of 1921 vested in the Orleans Levee Board all rights formerly held by the state to the bed and shores of Lake Pontchartrain within designated territorial limits which encompass the site in question.[4] To ensure the orderly development *1325 of the lakefront, the Board was granted broad powers for developing the area:
"To enable the said Board to perform the work herein provided for and to assist in defraying the cost and expenses thereof, and to carry out the purposes of existing laws and this Article of the Constitution, the State of Louisiana hereby grants and releases to said Board the title of the State in and to all public property necessary for the purposes hereof and all lands reclaimed or filled in within any levee embankments, slopes, retaining walls, sea walls, and breakwaters constructed hereunder and in and to all lands lying within the territorial limits of said project and hereby releases said land from any public trust or dedication and said Board shall have jurisdiction, power and authority to sell and lease, or otherwise dispose of such portion of the lands reclaimed and other property acquired for the purpose of said improvement, except the lands herein required to be dedicated by it for public use, together with any building, improvements or other works constructed thereon, under such terms and conditions and by such methods as said Board may deem proper . . ." Art. 16, § 7(h), 1921 La.Const.
This provision was not included in the 1974 Constitution but was continued as a statute ". . . restricted to the same effect as on the effective date of this constitution," by Article 14, § 16(A)(12). It was subsequently re-enacted by Act 729 of 1975 as R.S. 38:1235.2 with some minor stylistic changes.[5]
It is the contention of the defendants that this provision exempts the Board from compliance with the Public Lease Law because the Board is granted discretion to dispose of the lakefront properties as it sees fit; that discretion might or might not accord with the Public Lease Law. In effect, the defendants take the position that R.S. 38:1235.2 is a special statute, the provisions of which prevail in case of any conflict with a statute of general applicability. Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1971); Arata v. The Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362 (1969).
On the other hand, the plaintiffs are of the view that the provisions cited above have no such effect because no conflict exists between the special grant of authority to the Board and the general provisions of R.S. 41:1211 et seq. which are expressly made applicable to levee districts. They argue that the term "methods" in R.S. 38:1235.2 merely refers to the ways of disposing of the property mentioned earlier in the same sentence and has no bearing on the manner in which a specific agreement is contracted. Therefore, conclude the plaintiffs, the public policy of the state, which clearly favors competitive bidding for the lease of state property, and the legislative intent as embodied in the later enactment, the Public Lease Law, require that the differing provisions be reconciled in favor of public bidding, and that the lease in question be declared invalid.
In reaching a similar conclusion when the case was first before it, the Court of Appeal relied on the reasoning of Hall v. Rosteet, 247 La. 45, 169 So.2d 903 (1964), in which this court held that the Uniform Airport Law, R.S. 2:131 et seq. did not exempt the lease of a public airfield by the Calcasieu Parish Police Jury from the Public Lease Law. There the police jury contended that the special law exempted it from compliance with R.S. 41:1211 et seq. because no specific mention was made of public bidding and because the special law permitted longer *1326 leases than those allowed by the Public Lease Law. In rejecting this argument, we held the Public Lease Law applicable to leases of state property "in the absence of an express permissive provision in the special law that such leases could be negotiated without advertisement and competitive bidding." 247 La. 45, 60, 169 So.2d 903, 908.
Although we agree that Hall v. Rosteet, supra, recites the rule of law applicable to the facts before us, we believe that the Court of Appeal was in error not to view the provisions of R.S. 88:1235.2 as establishing an exemption from the Public Lease Law. In reaching this conclusion, we take note of several decisions in which appellate courts have found an exemption from the Public Lease Law on the basis of statutory language no more express than that in the instant case.
In Kliebert v. South Louisiana Port Commission, 182 So.2d 814 (4th Cir. 1966), writ refused, 248 La. 1030, 183 So.2d 652 (1966) the Court of Appeal for the Fourth Circuit construed the constitutional provisions empowering the port commission to construct and acquire structures to include "the implied authority to negotiate contracts consistent with its purpose." 182 So.2d 814, 818.[6] The Court of Appeal for the Third Circuit followed the reasoning of Kliebert v. South Louisiana Port Commission, supra, in Wright v. Lake Charles Harbor and Terminal District, 188 So.2d 449 (3d Cir. 1966), writ refused, 249 La. 620, 188 So.2d 922 (1966). There the court held that the district could enter into a contract of lease without complying with the procedures of R.S. 41:1211 et seq., apparently on the basis of the district's authorization ". . . to lease or sublease for processing, manufacturing, commercial and business purposes, lands or buildings owned, acquired or leased as lessee by it . . ." Art. 14, § 31, La.Const.1921. A similar result was reached in Hebert v. Police Jury of West Baton Rouge Parish, 200 So.2d 877 (1st Cir. 1967), writ refused, 250 La. 1032, 201 So.2d 520 (1967), wherein the court determined that a lease entered into pursuant to the "Industrial Inducement Law" (R.S. 39:991-1001 and Art. 14, § 14 (b.3) of the 1921 Constitution) was valid despite the police jury's failure to adhere to the requirements of the Public Lease Law.[7]
From this review of the jurisprudence, it appears to us that the broad grant of authority to the Levee Board in disposing of property reclaimed from the lake bottom operates as an exemption to the general law requiring public bids before state lands can be leased. The phrase "under such terms and conditions and by such methods as said Board may deem proper . . ." indicates a plenary grant of authority to the Board to dispose of the property within the lakefront area in any manner which it deems appropriate under the circumstances, which includes a negotiated lease. To hold otherwise is to engraft onto the special powers granted the Board a proviso that they be exercised in accordance with the provisions of any general statute dealing with related subject matter which the legislature might subsequently pass. Such a construction is warranted neither by the language in question nor the history of the development of the New Orleans lakefront.
We therefore conclude that the Court of Appeal committed error in holding the lease *1327 in question invalid for failing to comply with the requirements of the Public Lease Law.

Other Arguments Advanced by the Plaintiffs
The plaintiffs have also argued that the lease is invalid because its execution does not assist in defraying the expenses of the Levee Board's reclamation projects, a derogation from the requirements of R.S. 38:1235.2. In addition, the plaintiffs contend that the annual payments of $1.00 per acre are insufficient to support a contract of lease, and that in effect the Board is donating or lending the land to the Foundation in violation of Art. 7, § 14(A) of the 1974 Constitution.
A reading of the statute belies the plaintiffs' first contention. The phrase "to assist in defraying the cost and expenses thereof" refers to the state's grant to the Board of its title in the lakefront property and is obviously a corollary to the statute's first phrase, "[t]o enable the board to perform the work herein provided for." The language in question is clearly not a condition placed on the Board's activities in disposing of the reclaimed land. Although the plaintiffs refer to the case of Welsh v. Board of Levee Commissioners of Orleans Levee District, 168 La. 1037, 123 So. 705 (1929), as support for their position, that decision dealt with constitutional restrictions on the sequence of reclamation projects, and is not relevant to the issues at hand.
The second argument advanced by the plaintiffs also lacks merit. Although it is true that the price for a lease must be serious and not out of proportion to the thing's value (C.C. 2464; Murray v. Barnhart, 117 La. 1023, 42 So. 489 (1906)), we think that the obligations imposed on the Foundation by the lease constitute serious consideration. Besides the nominal annual payment, the Foundation must construct a building at a minimum cost of $300,000, the design and structure of which are subject to the Board's approval. The building will eventually become the Board's property with no compensation due to the Foundation. The Foundation is also obligated to maintain the improvements during the lease term and to pay insurance premiums on any policies covering the improvements. Certainly the obligations assumed by the lessee are as great as those in City of New Orleans v. Disabled American Veterans, 223 La. 363, 65 So.2d 796 (1953), wherein this court refused to invalidate a lease upon similar arguments.
The plaintiffs have further alleged that the contract between the defendants violates R.S. 14:316, which forbids the naming of public buildings for living persons. The plaintiffs contend that the agreement in question amounts to a joint venture, whereby the Board donating the land and the Foundation constructing the building which will, at the agreement's termination, be maintained with public funds.
R.S. 14:316 provides:
`No public building, public bridge, public park, public fish or game preserve, or public wild life refuge built, constructed, and maintained in whole or in part with public funds and title to which stands in the name of the state or any of its subdivisions or in the name of any institution receiving its support in whole or in part from the state shall be named in honor of any living person.
The officer, officers, board, or commissioner in charge of a public building, public park, public fish or game preserve, or public wild life refuge named in honor of any person who is still living shall change the name and destroy, deface, or remove all plaques, signs, or other evidence of the old name appearing on the building, bridge, park, preserve, or refuge.
Whoever violates this Section or fails to perform the duties imposed by this Section shall be fined not less than one hundred dollars nor more than two hundred dollars and, in default of fine, imprisoned for not less than thirty days nor more than sixty days."
It is well settled that "[a]n injunction should not be issued to prevent the commission of a crime, if the only reason for preventing *1328 it is that it is a crime." City of New Orleans v. Liberty Shop, 157 La. 26, 28-29, 101 So. 798, 799 (1924). See also, Pick's Auto Parts No. 2, Inc. v. Hodge's Auto Parts, 334 So.2d 547 (4th Cir. 1976); Simon v. Southwest Louisiana Electric Membership Corp., 267 So.2d 757 (3d Cir. 1972), writ refused, 263 La. 625, 268 So.2d 680 (1972). Here the plaintiffs have advanced no reason why enforcement of the statute by criminal prosecution is not adequate in case of a violation. When the building is named, the proper authorities may then determine whether the lease of valuable state property at a nominal sum for the erection of the structure, named for a living person, is a use of public funds prohibited by the statute.
A final objection to the lease is that the Board had previously dedicated the land in question as a park to the City of New Orleans by Ordinance 2156 M.C.S., approved by the City Council on April 6, 1961. The plaintiffs contend that the dedication removed the Board's, and indeed the City's, authority to change the status of the property by leasing it to the foundation. However, the record does not reveal any response to this argument other than a general statement that not all the reclaimed land had to be dedicated for public use under the provisions of Art. 16, § 7(h) and its present embodiment, R.S. 38:1235.2. Because this issue has not been developed sufficiently for us to rule, the case is remanded to the district court for a determination of this question.
Accordingly, the judgment of the Court of Appeal is reversed and the case is remanded to the district court for proceedings, including responsibility for costs, not inconsistent with the views expressed herein.
NOTES
[1] Plaintiffs' petition alleged violation of the Public Lease Law, R.S. 41:1211 et seq.; R.S. 14:316, which prohibits naming public buildings for living persons; and Art. 5, § 1:4(18) of the Comprehensive Zoning Ordinance of 1970 of the City of New Orleans.
[2] The Court of Appeal noted that the plaintiffs had apparently abandoned the argument that the lease violated certain city ordinances. 327 So.2d 495, 501. The court also noted that the plaintiffs in brief argued that the "consideration" was insufficient to support the lease and that the land in question had previously been dedicated to the City as a park, although no such allegations were contained in the petition. The plaintiffs were allowed to amend and supplement the petition to advance the last two arguments.
[3] "§1211. Lessor defined

For the purposes of this Part, the term `lessor' shall refer to and include the Register of the State Land Office, the commissioner of conservation, and any and all other branches, departments or agencies of the state, or any school district, levee district, drainage district, municipal or parochial subdivision of this state, or any penal or charitable institution, or state university or college, or other unit or institution, deriving its authority and powers from the sovereignty of the state."
"§ 1212. Lands which may be leased; purposes; lease of sixteenth section lands for agricultural purposes; negotiation of surface leases of school lands
A. Any lessor may, through its governing authority, lease for trapping, grazing, hunting, agricultural and any other legitimate purposes whatsoever, other than for oil, gas or other mineral purposes and development, any lands of which the lessor has title, custody or possession, and the lessor may, at its option, lease the land on a share basis in accordance with such terms and conditions as the governing authority deems to be to the best interest of the lessor.
. . ."
"§ 1213. Application for lease
Any person desiring to lease any land in accordance with the provisions of this Part shall present to the lessor a written application, together with a cash deposit of thirty-five dollars which shall be returned to the applicant if he makes an unsuccessful bid. The application shall set forth the name and address of the applicant, a reasonably definite description of the location and amount of land which the applicant desires to lease and the purposes for which the lands are to be leased. The applicant shall ask that the application be registered and that the land described therein be leased to him under the provisions of this Part. The lessor shall register the application and shall order an inquiry to determine whether the lands applied for are leasable for such purposes."
"§ 1214. Advertisement and bids
If the lessor determines that the lands in question may be leased, the lessor shall publish an advertisement in the official journal of the parish where the land is located setting forth a description of the land to be leased, the time when bids therefor will be received, and a short summary of the terms and conditions and purposes of the lease to be executed; provided that if the lands are situated in two or more parishes the advertisement shall appear in the official journals of all parishes in which the lands are located. The advertisement shall be published for a period not less than fifteen days and at least once a week during three consecutive weeks. The lessor may also send notices to those whom it may think would be interested in submitting bids for the leases.
The lessor may on its own initiative advertise for bids for any lease as provided herein, but without application therefor. The applications and bids provided for in this part shall be secret, sealed applications and bids and shall be forwarded through the United States mail to the lessor at its domiciled address.
The advertisements in accordance with this section shall constitute judicial advertisements and legal notices within the contemplation of Chapter 5 of Title 43 of the Louisiana Revised Statutes of 1950."
"1215. Opening of bids; execution of leases; exceptions, public benefit corporations
A. At the date and hour mentioned in the advertisement for the consideration of bids, the bids shall be publicly opened by the lessor at its office. The lessor shall accept only the highest bid submitted to it by a person or persons who meet all of the conditions of this Part, except in the case where the lessor is a public benefit corporation as authorized and defined in Subsection B hereof. The lessor shall have the right to reject all bids. The lessor may execute any lease granted under such terms and conditions as it deems proper, or as otherwise provided in this Part. All leases signed by the lessor shall be executed in triplicate and shall be disposed of as follows: one copy shall be furnished to the lessee; one copy shall be recorded in the conveyance records of the parish or parishes in which the land lies, and one copy shall be retained in the records of the lessor.
. . ."
"§ 1217. Term and rental; port authorities excepted
A. All leases executed under the provisions of this Part shall be for a period not exceeding ten years and shall provide for consideration to be paid as a cash rental of not less than one dollar per acre, which shall be payable in cash annually and in advance, or if the land is leased for the agricultural purpose of planting, growing, cultivating and harvesting any agricultural crop the consideration shall be so paid in cash or on a share basis at the option of the lessor; . . .
. . ."
[4] Roughly speaking the territory extends from the Jefferson Parish line to approximately one-quarter mile past Paris Road. It is bounded on the south by the right-of-way line of Haynes Boulevard east of the airport and by Robert E. Lee Boulevard west of the airport.
[5] The Court of Appeal stated that from the position it reached, this change was academic since it held that the constitutional provisions had not served as an exemption to the requirements of R.S. 41:1211 et seq. The district court, on the other hand, when it considered the case on remand, seemed to place emphasis on the change in status from constitutional provision to statute, as indicated in the written reasons for judgment issued by the court. Our disposition of this issue does not consider any possible effect of the change, although the minutes of the Constitutional Convention indicate that no change was intended by continuing the provision as a statute. See Verbatim Transcripts of the 1973 Constitutional Convention, Vol. 39, Day 121, pp. 99-105.
[6] In its original hearing, the Court of Appeal distinguished Kliebert because there the lease was regarded as one essential to the operation of the authorities of the port commission, whereas the lease between the Board and Foundation was viewed as having no relation to the Board's primary function. We cannot agree that granting a lease for the construction of a public museum and library is foreign to the Board's authority to develop the lakefront.
[7] Although the opinion does not specify which provisions of the "Industrial Inducement Law" served as the exemption, R.S. 39-996 provided in pertinent part:

"Such lease shall be made [under] such other terms and conditions and for the time which may be determined by the municipality and may contain provisions authorizing the purchase of the entire leased project or any portion thereof by the lessee or its assignee after all bonds issued thereunder have been paid in full, for such consideration and [under] such terms and conditions as the municipality may determine. . . ." (This statute has subsequently been slightly amended).