Dear Mr. Magendie:
You have requested an opinion of the Attorney General regarding the applicability, vel non, of the State's Public Bid Law (Bid Law) to the Capital Outlay Jazzland Project (Project). In addition, you have requested our review of Attorney General Opinion No. 97-287, for the purpose of determining what effect, if any, said opinion has on the issue at hand.
General Counsel to the Division of Administration (General Counsel) has submitted for our consideration a memorandum in which she opines that the Bid Law does apply to the expenditure of state funds appropriated for Jazzland. We disagree.
Act No. 28 of the 1997 Regular Session of the Louisiana Legislature (Act 28) constitutes the Capital Outlay Act and provides with respect to the State's capital outlay budget and program. It contains an appropriation to the City of New Orleans (City) for the "Jazzland Theme Park Infrastructure Planning and Construction". Cash and non-cash lines of credit totaling $8,000,000 were granted for the Project by the State Bond Commission. It is anticipated that these lines of credit will be reauthorized pursuant to the Capital Outlay Act for 1998-1999. In addition to state-appropriated funds, private funds totaling $70,000,000 are also projected to be expended.
Section 3 of Act 28 provides, in pertinent part, the following:
 "Section 3. The expenditure of funds appropriated in this Act shall be in conformity to all existing statutes relative to public bidding, contractual review, and R.S. 39:101 through 128 and any other statutes affecting the capital outlay program for state government, state institutions, and political entities." (Emphasis added.)
Section 9 further provides, in pertinent part, the following:
 "Section 9. Furthermore, all ports, levee districts and other non-state entities . . . must follow all laws pertaining to public bidding." (Emphasis added.)
Section 9023 authorizes the creation and organization of an economic development corporation, if the local governing authority (e.g., the City) declares a need for same and an application is filed and accepted by the City. The City intends to enter into a cooperative endeavor agreement with NOLA Economic Development Corporation (NOLA), pursuant to R.S. 33:9020, et seq.
Under the terms of the agreement, the City will provide funds it receives by appropriation in Act 28 to NOLA for expenditure on the Project.
Section 9031 provides:
"Section 9031. Cooperative endeavors with a public body
 For the purpose of aiding in the implementation of an economic development plan any public body may cooperate or engage in any cooperative endeavors with any economic development corporation organized pursuant to the provisions of this Chapter."
Section 9024(A) requires that economic development corporations incorporate themselves as private nonprofit corporations. It provides, in pertinent part, the following:
"Section 9024. Incorporation as a private non-profitcorporation
 A. After the said application or applications has or have been approved by such governing authority and approved by the governor or such local chief executive officer, the proposed corporation shall incorporate itself and shall operate as a private non-profit corporation pursuant to the laws of Louisiana, and in no manner whatsoever shall funds and assets of the state be used to carry out normal governmental services." (Emphasis added.)
Section 9024(E)(1) exempts such corporations from the laws governing public bodies:
 "E. (1) Economic development corporations are not agencies of the state, nor of any subdivision of the state, and are prohibited from exercising governmental powers or carrying out functions which are purely and solely of a public nature. Such corporations are not subject to the laws which govern the operation of public bodies." (Emphasis added.)
The exemption in (E)(1) was added by Act No. 1179 of the 1997 Regular Session of the Louisiana Legislature (Act 1179).
The Bid Law constitutes one of the laws which govern the operation of public bodies. As such, Section 9024(E)(1) clearly exempts NOLA from the Bid Law. Having so concluded, we now turn to the issue of whether the language in Act 28 requires compliance by NOLA with the Bid Law for the expenditure of state-appropriated funds, despite this specific exemption.
As previously noted, Sections 3 and 9 of Act 28 require that the expenditure of funds appropriated thereunder "shall be in conformity to all existing statutes relative to public bidding", and "must follow all laws pertaining to public bidding", respectively. These provisions, as well as the exemptive language in Section 9024(E)(1) were all enacted in the 1997 Regular Session of the Louisiana Legislature (i.e., Acts 28 and 1179). Act 1179 was acted upon last by the Legislature.
In resolving this issue, we are guided by established rules of statutory interpretation and construction. These principles are clearly enunciated by the Court in State in the Interest ofWright, 408 So.2d 1123 (La.App. 1st Cir. 1981). The Court, citing Chappuis v. Reggie, 222 La. 35, 62 So.2d 92 (1952), held:
 "In Chappuis v. Reggie, supra, the Louisiana Supreme Court laid down the following rules concerning the interpretation of legislative acts which are in conflict and are enacted in the same legislative session, to wit:
 `The uniform jurisprudence is to the effect that all statutory provisions are to be given effect whenever possible . . . . If acts can be reconciled by a fair and reasonable interpretation, it must be done, since the repeal of a statute by implication is not favored and will not be indulged if there is any other reasonable construction. . . . Moreover, where two acts relating to the same subject are passed at the same legislative session, there is a strong presumption against implied repeal, and they are to be construed together, if possible, so as to reconcile them, giving effect to each. . . . In the latter case this Court quoted with approval the following language: `Where it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws * * *. These rules are particularly applicable to statutes passed at or about the same time, or at the same session of the legislature, since it is not to be presumed that the same body of men would pass conflicting and incongruous acts.'"
Thus, only when there is a direct unresolvable conflict between two acts should the "latest expression of the legislative will" test be employed.
Applying the above rules, we find that there is no direct unresolvable conflict between Sections 3 and 9 of Act 28 and Act 1179. We believe that the requirements in Sections 3 and 9 that state-appropriated funds be expended in conformity to, and follow all existing laws relative and pertaining to public bidding, necessarily includes the Bid Law exemption in Section 9024(E)(1). We further believe that this interpretation gives credence to the Legislature's recognition that, while the Bid Law promotes public confidence in the manner in which public funds are expended, it must be balanced against the ability of legislatively authorized private corporations to efficiently and expeditiously initiate and complete projects of economic development — projects to positively address unemployment, underemployment and other forms of economic distress causing hardship to many individual citizens and their families of this state.
We find support for our position in R.S. 33:9021(7) through (10), also added by Act 1179. It provides, in pertinent part:
 § 9021. Findings, declarations of necessity, andpurpose
It is hereby found and declared that:
* * *
 (7) Economic development is a legitimate concern of government because it serves the public interest, but it is not purely and solely a public purpose, since successful economic development serves the private interests of business and industry as much as the public interest.
 (8) Public-private partnerships which take advantage of the special expertise and experience of representatives of the private sector can be among the most effective programs to encourage and maintain economic development.
 (9) The economic development needs of the state of Louisiana require the existence of entities which can function as public-private partnerships, taking advantage of the congruence between the public interest and the interest of business and industry.
 (10) It is in the best interest of the state of Louisiana and of its regions, parishes, and municipalities to encourage, create, and support, public-private partnerships and to permit and encourage participation by representatives of private-sector industries
which may benefit from economic development programs, while providing appropriate protections for the public interest." (Emphasis added.)
As can be gleaned from the above, the Legislature is acutely aware of the integral part private development corporations must play in the economic development of this State and its cities. Paragraph (10) clearly directs the State and its parishes and cities to permit and encourage these private enterprises to participate in such projects, while providing appropriate protections for the public interest. Among the protections deemed appropriate are those specifically set forth in Section 9024(E)(2):
 "E. (2) Without altering the private nature of economic development corporations, any economic development corporation which obtains funds from the state or any agency or subdivision thereof of ten thousand dollars or more in any calendar year shall, as a condition to the receipt or expenditure of such public funds, maintain all of its books and records with respect to the use or receipt of any public funds as public documents and make them available for inspection and copying pursuant to the provisions of the public records law, R.S. 44:1, et seq., hold any and all meetings of such corporations with respect to the receipt or expenditure of public funds in public after due notice thereof in accordance with the provisions of the open meeting law, R.S. 42:4.1, et seq., and comply with any conditions of funding imposed by the funding agency and permitted by the terms of this Chapter." (Emphasis added.)
The laws deemed necessary by the Legislature to protect the public interest relative to the expenditure of public funds by NOLA are the public records and open meetings laws. There is no mention, whatsoever, of the Bid Law, and the application thereof, in our opinion, would violate the express provisions of Section 9024(E)(2). Thus, while compliance with the Bid Law may be one of the "conditions of funding imposed by the funding agency" in Act 28 (i.e., the State), we find that it is not "permitted by the terms of this Chapter" (i.e., the laws governing NOLA). Had the Legislature intended the Bid Law to be appropriate protection of the public interest for the expenditure of state-appropriated funds by NOLA, it certainly could have so provided. To the contrary, it granted an exemption therefrom.
It could be argued that R.S. 33:9035 requires compliance with the Bid Law by NOLA for the expenditure of public funds for the various purposes enumerated therein. It provides, in pertinent part, the following:
 "The costs of an economic development project incurred by the local governmental subdivisions in accordance with R.S. 38:2181, et seq.
pertaining to the letting of public contracts may include the sum total of all reasonable or necessary costs incurred incidental to or in furtherance of an economic development project. . . ." (Emphasis added.)
We disagree. Section 9035 pertains to costs incurred by a local governmental subdivision which, pursuant to the authority contained in Section 9034, proposes to initiate an economic development project without the necessity of creating andorganizing an economic development corporation. As previously discussed, the City intends to create NOLA for this purpose.
One could also argue that, if the "latest expression of the legislative will" test is applied, the provisions of the Capital Outlay Act for fiscal year 1998-1999, and subsequent Capital Outlay Acts, constitute the latest expression, thus making it the controlling law over R.S. 33:9024(E)(1), as of July 1, 1998 and beyond. We find it unnecessary to address this issue, having concluded that Acts 28 and 1179 are not in direct and irreconcilable conflict with each other.
Our courts have also recognized exceptions to the applicability of the Bid Law to certain public contracts which, by their very nature, are so complex and intricate, that to apply the Bid Law would be an unwarranted and impractical restriction. In Kliebert v. South Louisiana Port Commission, 182 So.2d 814
(La.App. 4th Cir. 1966), writ refused, it was held:
 "Plaintiff's final attack on the agreement between defendant and Bayside is based on an alleged violation of . . . the Competitive Bidding Statute. He contends that the agreement is illegal and invalid because it was negotiated rather than being submitted for public bidding. . . . It would be an unwarranted restriction on the operation of the commission to require it to submit an intricate agreement of this type proposed here to the rigors of the Competitive Bidding Statute. . . ."
In Hebert v. Police Jury of West Baton Rouge Parish,200 So.2d 877 (La.App. 1st Cir. 1967), writ refused, the Court held that an industrial inducement contract and the issuance of revenue bonds in connection therewith, pursuant to R.S. 38:991,et seq. was not subject to the Bid Law:
 "The Third point as to the alleged violation of the . . . Public Contract Law (R.S. 38:2211 to 38:2217, inclusive) is likewise without merit. . . . This court is well aware of the provisions of the Public Contract Law of this state but the express provisions of R.S. 39:991 clearly provide that the issuing authority may issue revenue bonds and use the funds derived from the sale of such bonds to acquire industrial plant sites and to acquire, purchase, construct or improve industrial plant buildings and necessary property and appurtenances thereto. . . . The Public Contract Law cannot be applied to such a situation and in particular where in many instances complex industrial facilities must be constructed by manufacturers which own or have access to certain trade secrets, patents and other processes that are unavailable to general contractors. . . ."
See also JTS Realty Corporation, et al. v. City of BatonRouge, et al., 499 So.2d 274 (La.App. 1st Cir. 1986), rehearing denied.
We have been advised by representatives of Jazzland's developers that the site of the project encompasses 220 available acres located twelve miles from the heart of New Orleans. One hundred acres are designated for immediate development of the initial phase, consisting of the Jazzland Theme Park and its parking area.
The family-oriented Theme Park will actually be designed as a village, consisting of sixty to seventy buildings, a natural lake, amusement rides, numerous stages for live entertainment, an indoor facility for large groups, the presentation of regional foods, a replica of Pontchartrain Beach and acres of open areas for picnicking. A second phase will include a water park, an amphitheater, RV campground, two hotels and a retail area.
Jazzland is expected to conservatively draw more than 1.3 million visitors and create over 4,000 jobs in its first year of operation. Once in operation, it is projected to generate state and local tax revenues totaling $14.5M dollars, annually. We turn now to the actual design and construction of the project, and believe the following information to be relevant to the issue before us.
 (1) Financing for the project is sophisticated, involving state, local and private funding which must be coordinated to close within days for the construction of the project to commence, timely, in July, 1998.
 (2) Work on the project, including the construction funded by the Capital Outlay Act, is interrelated and must commence within thirty days to enable the project to be completed for opening in April-May of the year 2,000. If Jazzland is not ready to open during this sixty day "window", the entire year is lost. Without the timely commencement of work, financing will be withdrawn and the project will fall.
 (3) The design and construction of a "one of a kind" theme park, such as Jazzland, is very unique, compared to other projects. Not only is there a single design plan document for all funding sources, including the State's portion, but the design plan is constantly being changed simultaneously with ongoing construction. This design/build concept, while providing complete flexibility for delivery of the end product, does not lend itself to a full set of plans for bidding the work. In fact, no existing theme park has ever been constructed on fully developed plans. In other words, there will never be a complete set of design plans during construction of the Project.
 (4) The imposition of the Bid Law on Jazzland contracts, including contracts relating to state-appropriated funds, will delay initial construction which, in turn, will ensure the deceleration of the entire project. This will result in the withdrawal of financing and project failure.
We are of the opinion that ample judicial authority exists to support the position that the Bid Law is not applicable to contracts let by public entities which are too complex to be the object of competitive bidding. If such is true for public entities, this logic would certainly extend to complex and intricate contracts executed by private entities such as NOLA, where only a small percentage of the funds required to construct the project are state-appropriated. The fact that the Bid Law requirement is contained in a Capital Outlay Act is immaterial, since it is the complexity of the contract that is controlling under this line of jurisprudence.
Considering the unique complex characteristics relating to the financing, design and construction of Jazzland, as fully discussed above, we are of the opinion that the imposition of the Bid Law on this project would constitute an unwarranted impractical restriction, predictably resulting in its demise. Accordingly, and in addition to the reasons heretofore expressed, we find the Bid Law inapplicable to the expenditure of state-appropriated funds for the Project. We turn now to Attorney General Opinion No. 97-287 and its effect on the issue at hand.
Initially, we note the absence of any discussion concerning the complexity and/or intricacy of the contracts let by the SRA for its project. Of equal importance is the glaring distinction between the SRA and NOLA.
The SRA is legislatively created as an agency and instrumentality of the State of Louisiana to perform an essential public/governmental function. R.S. 38:2324. The governing authority of the SRA is vested in a board of directors composed of thirteen members, all of whom are appointed by the governor and confirmed by the Senate. R.S. 38:2322. The SRA is created as a conservation and reclamation district empowered on behalf of the State, to conserve, store, control, preserve, utilize and distribute the waters of the rivers and streams of the Sabine watershed. R.S. 38:2321 and 2325. Further, representatives of the State Budget Office confirm that the SRA constitutes a budget unit.
By contrast, NOLA is a private nonprofit corporation which is expressly prohibited from functioning as an agency of the state or of any political subdivision thereof. It is prohibited from exercising governmental powers or carrying out functions which are purely and solely of a public nature. Directors, officers or employees are prohibited from functioning as, and are not to be considered public employees for any purpose whatsoever. The primary purpose for NOLA is to provide an alternative method
for the enhancement of economic development through various vehicles of assistance from local government, including cooperative financing, cooperative development or any other form of economic development activity. To better accomplish this purpose, the Legislature granted NOLA an exemption from the Bid Law relative to the expenditure of Capital Outlay funds.
Based on the above, we believe Opinion No. 97-287 can be distinguished from the opinion expressed herein.
We are cognizant of the impact the future application of this opinion may have on public policy relating to the Bid Lawvis-a-vis Capital Outlay Act appropriations. We trust that the Legislature can adequately address this concern. However, we emphasize that this opinion is limited in scope to the unique facts presented for our consideration, specifically involving NOLA and the Jazzland project. The conclusions expressed herein are not intended to apply to other projects and/or contracting parties, all of which must be considered on their own individual facts and the laws applicable thereto.
In summary, and for the above and foregoing reasons, it is the opinion of this office that NOLA is not required to comply with the Bid Law in the expenditure of funds appropriated pursuant to Act 28 for the Jazzland project. Further, we affirm Attorney General Opinion No. 97-287, and find it to be inapposite to the issues presented in your inquiry.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/cla