837 So.2d 726 (2003)
LOUISIANA DEPARTMENT OF AGRICULTURE AND FORESTRY and Louisiana Agricultural Finance Authority, Plaintiffs-Appellants,
v.
LOUISIANA STATE LICENSING BOARD FOR CONTRACTORS, Defendant-Appellee.
No. 36,694-CA.
Court of Appeal of Louisiana, Second Circuit.
January 29, 2003.
*727 Gelpi and Associates by C. James Gelpi, David McFadden, Dan Zimmerman, James Marvin Montgomery, New Orleans, for Appellants.
Paul J. McMahon, III, Lafayette, for Appellee Louisiana State Licensing Board for Contractors.
Virgil Russell Purvis, Jr., Jonesville, for Intervenor/Appellee, Everett Mayo.
Before STEWART, GASKINS & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from a trial court judgment awarding partial relief to plaintiffs, Louisiana Department of Agriculture and Forestry ("Department") and Louisiana Agricultural Finance Authority ("LAFA"), under the Contractors Licensing Law exemption found in La. R.S. 37:2157(A)(2).[1] Plaintiffs, Department and LAFA, now appeal the judgment of the trial court. For the reasons stated herein, we amend the judgment of the trial court and, as amended, affirm.

FACTS
LAFA, under La. R.S. 36:629(K), is an agency created within the Department. Under La. R.S. 3:266(14), LAFA has the power to acquire immovable property and to own and construct public work projects on the property.[2] LAFA is the owner of *728 various properties around the state, including properties in Monroe, Winnsboro, Jonesville, Minden and Oak Grove, on which it has constructed or is planning to construct a number of public work projects.[3] The public work projects on these various properties are the public work projects at issue in this case. The goal of these projects is to carry out Louisiana's Boll Weevil Eradication Program. The Legislature authorized LAFA to use its powers to implement this program.[4] LAFA, using its own employees, equipment and material, began construction of office and related work space at the aforementioned properties after it received approval from the State Bond Commission to sell bonds to finance these public work projects.
Soon after construction of the various public work projects began, the defendant, Louisiana State Licensing Board for Contractors ("Licensing Board"), issued a series of cease and desist orders directing the Department and LAFA to cease and desist any activity, conduct or practice then being undertaken concerning the public work projects at issue. Created under La. R.S. 37:2150, et seq. ("Contractors Licensing Law"), the Licensing Board has the authority to monitor construction projects to ensure compliance with contractors licensure requirements.[5] In the instant case, the Licensing Board objected to LAFA's use of its own public employees, equipment and material in carrying out the public work projects at issue, insisting that LAFA had to retain a licensed contractor, who, in turn, would provide the workers, equipment and materials needed in carrying out these public work projects. LAFA disagreed with the Licensing Board's actions, but agreed to retain a licensed contractor, Mr. Everett Mayo ("Mayo"), to supervise, superintend and oversee the public works at issue. The Licensing *729 Board, however, continued its efforts to enforce the cease and desist orders it had previously issued, arguing that, in effect, Mayo had allowed his license to be used by LAFA because Mayo had provided only one employee for only one project site, while all other personnel on the various projects continued to be employees of the Department and LAFA. Moreover, the Licensing Board asserted that, because these actions showed that LAFA was acting as a contractor, which is prohibited by La. R.S. 37:2154(A)(4), it was violating the Contractors Licensing Law.[6]
The Department and LAFA filed suit on April 21, 1999, asking the trial court for a declaratory judgment, to issue a temporary restraining order and to issue a preliminary and permanent injunction against the Licensing Board in order to prevent further enforcement of its cease and desist orders. Specifically, the Department and LAFA asked the trial court for a declaratory judgment that would give LAFA the authority to use its own employees, equipment and material in carrying out the public work projects at issue in this case. On the same day the suit was filed, the trial judge granted a temporary restraining order against the Licensing Board; and, on April 27, 1999, the trial judge granted a preliminary injunction prohibiting the Licensing Board from taking any action to enforce the cease and desist orders. Trial on the permanent injunction was set for May 18, 1999. Before the trial, the Licensing Board filed an answer and reconventional demand against the Department, LAFA and Mayo, seeking a permanent injunction to prohibit them from utilizing any public employees on the public works projects in Monroe or Oak Grove or any other site designated as a "Boll Weevil" project.
On May 14, 1999, the Department and LAFA filed a motion to continue the trial, asserting that legislation was then pending in the Legislature that would directly affect the issues in this case. The motion was granted and the trial was then set for July 12, 1999. Before the trial, the Legislature enacted what is now La. R.S. 3:266(21), which provides:
The authority (LAFA) shall have all the powers necessary to give effect to and carry out the purposes and provisions of this Chapter, including, in addition to all other powers granted by other provisions of this Chapter, the powers to:

Notwithstanding any other law, supervise and utilize public employees, equipment, and material in carrying out public work, including public work in furtherance of Formosan termite suppression. (Emphasis added.)
After the enactment of this legislation, the Department and LAFA argued to the trial court that, unequivocally, La. R.S. 3:266(21) allows LAFA to use its own public employees, equipment and materials in carrying out all the public work projects at issue, notwithstanding the requirements of the Contractors Licensing Law.
On April 10, 2002, the trial judge rendered judgment, granting a permanent injunction against the Licensing Board, prohibiting it from enforcing the cease and desist orders or from taking any action against the Department, LAFA and Mayo concerning the public works in Monroe, Winnsboro, Jonesville, Minden or Oak Grove that are ongoing or had been completed *730 as of July 12, 1999. Further, the trial judge denied the Licensing Board's request for a permanent injunction against the Department, LAFA and Mayo. Finally, the trial judge issued a declaratory judgment which stated:
1. The purpose of the Contractors Law, La. R.S. 37:2150, et seq., is to protect the general public from unscrupulous persons "engaging in the contracting vocation." The Department and LAFA are not holding themselves out to the public to construct buildings for a fee.
2. The issuance of cease and desist orders by the Contractors Board against the Department and LAFA with respect to the projects located in Monroe, Winnsboro, Jonesville, Minden and Oak Grove do nothing to protect the health, safety, and general welfare of those persons dealing with persons engaged in the contracting vocation.
3. It is not the duty of the Contractors Board to regulate the deployment of state employees.
4. The Department and LAFA may construct the buildings under construction or already constructed by and owned by the Department and LAFA, located in Monroe, Winnsboro, Jonesville, Minden and Oak Grove with their own employees, material and equipment.
5. A contractor is not required by the Contractors Law to furnish labor, materials or equipment.
6. Any entity that furnishes labor, or that furnishes labor and material or equipment or that installs material or equipment is considered a subcontractor and is subject to the provisions of the Contractors Law. The Department and LAFA are exempt from the Contractors Law when the Department or LAFA provide labor, material or equipment, or install material and equipment, for construction projects which are owned by the Department or LAFA and are not for sale, rent, public use or public assembly.
7. The buildings under construction or already constructed by and owned by the Department and LAFA, located in Monroe, Winnsboro, Jonesville, Minden and Oak Grove are not for sale, rent, public use or public assembly and are not subject to the provisions of the Contractors Law.
8. Buildings which cost in excess of $100,000 may be undertaken by a public entity with its own employees under the provisions of La. R.S. 38:2212(B).
9. Everett Mayo violated no provisions of the Contractors Law.
The Department and LAFA assert that the trial court's judgment does not resolve the issue of whether La. R.S. 3:266(21) allows LAFA to utilize its own public employees, equipment and material in carrying out all its own public work projects and not just the projects that are exempt from the Contractors Licensing Law under La. R.S. 37:2157(A)(2). According to the trial judge, all LAFA's public work projects are exempt from the Contractors Licensing Law except one of the projects in Monroe, which will be used by the public.[7] The Department and LAFA argue that *731 La. R.S. 3:266(21) allows LAFA to use its own public employees, equipment and material in carrying out all its own public work projects at issue, including the site in Monroe. The Department and LAFA now appeal, raising the following assignment of error:
The trial court erred in failing to issue a declaratory judgment that, as to public works that are not otherwise exempt from the Contractors Licensing Law, La. R.S. 3:266(21) allows LAFA to utilize public employees, equipment, and material in carrying out public work, notwithstanding the provisions in the Contractors Licensing Law that generally prohibit public entities from utilizing public employees, equipment, and material to build buildings.

DISCUSSION
The Department and LAFA contend that the trial court did not resolve the issue of whether La. R.S. 3:266(21) applies to all the public work projects at issue in this case. They request that this court render the declaratory judgment that the trial court failed to render. The Department and LAFA argue that the express authority of La. R.S. 3:266(21), which sets forth that, "notwithstanding any other law [at issue here, the Contractors Licensing Law], [LAFA may] supervise and utilize public employees, equipment, and material in carrying out [its] public work," gives LAFA the authority to use its own employees, equipment and material in carrying out its own public work projects. We agree, however, the issue of justiciability must first be addressed.
Although the issue of justiciability has not been raised on appeal, we must first consider this issue inasmuch as it is central to the granting of declaratory relief. Atchafalaya Basin Levee District v. Pecquet, 364 So.2d 610 (La.App. 1st Cir. 1978). The supreme court, in Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1971), appeal dismissed, 404 U.S. 931, 92 S.Ct. 281, 30 L.Ed.2d 244 (1971), defined "justiciable controversy" as:
"[a]n actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relation of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character. Further, the plaintiff should have a legally protectable and tangible interest at stake, and the dispute presented should be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."
A justiciable controversy is shown if there is a genuine controversy between a plaintiff and a defendant as to legal rights requiring a judicial determination. Midboe v. Commission on Ethics for Public Employees, 94-2270 (La.11/30/94), 646 So.2d 351. In the case sub judice, we find that a genuine controversy is presented and that there is an existing actual and substantial dispute. The dispute between LAFA and the Licensing Board is not one that is hypothetical or abstract. The parties have a real adverse interest that only a judicial decision will resolve. Since the Department and LAFA have a legally protected, immediate and tangible interest in resolving the question of whether La. R.S. 3:266(21) allows LAFA to use its own employees, equipment and materials in carrying out the public work projects at issue in the case sub judice, our proper resolution of this issue through declaratory judgment is needed to terminate this controversy.
A person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation and the declaratory judgment *732 will remove the uncertainty or terminate the dispute. In re P.V.W., 424 So.2d 1015 (La.1982). La. C.C.P. art. 1872 provides, in pertinent part:
A person ... whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.
A suit for declaratory judgment is an appropriate means of testing the constitutionality or applicability of an ordinance in which there is an actual controversy between the parties. Liberto v. Rapides Parish Police Jury, 95-456 (La.App. 3d Cir.11/2/95), 667 So.2d 552. Further, La. C.C.P. art. 1881 provides:
Articles 1871 through 1883 are declared to be remedial. Their purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and they are to be liberally construed and administered.
Appellate courts, as well as the trial court, are granted broad discretionary power to determine whether declaratory relief may be appropriate in a particular suit. Liberto, supra, citing Atchafalaya Basin Levee District, supra. La. C.C.P. art. 2164 provides, in pertinent part:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.
In Ricard v. State, 544 So.2d 1310 (La. App. 4th Cir.1989), the court examined the issue of whether it could rule on an issue on which the trial court failed to rule. In Ricard, supra, the issue involved the constitutionality of a statute and the propriety of an election. The court held that, although the trial court did not rule on the merits of the issue raised by the plaintiff's suit, the question presented is a question of law alone; and, therefore, having a complete record before the court and briefs that address the merits, it would decide the issue. In the case sub judice, declaratory relief is appropriate. We have a complete record before this court and the merits have been briefed and addressed; and, therefore, we will also decide the issue in question.
Indeed, the trial court ruling did not terminate the controversy in the instant case. The trial judge gave the Department and LAFA most of the relief they requested, but not all of the relief that should have been given. While the trial judge granted the Department and LAFA relief under the exemption in the Contractors Licensing Law, La. R.S. 37:2157(A)(2), he did not address whether La. R.S. 3:266(21) applied to LAFA's public work project in Monroe, which will be open to the public and which is not exempt. We now hold that La. R.S. 3:266(21) applies to the public work project in Monroe and that LAFA can use its own employees, equipment and materials in carrying out this public work project. We grant the Department and LAFA full declaratory relief under this statute.
La. R.S. 3:266(21) is clear and unambiguous and we find that it gives LAFA express authority to use its own employees, equipment and material in carrying out all its own public work projects and its ability to carry out public work projects is not limited to only the project exemption applied under the Contractors Licensing Law. Since we find that La. R.S. 3:266(21) applies to LAFA's public work project in Monroe, we amend the trial court judgment to reflect that La. R.S. 3:266(21) applies to this project.
*733 In addition, we find that La. R.S. 3:266(21) and the Contractors Licensing Law are two laws that can coexist. Rules of statutory construction provide that, where two statutes deal with the same subject matter, they should be harmonized if possible; but, that, if there is a conflict, that statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. Esteve v. Allstate Ins. Co., 351 So.2d 117 (La.1977); State v. Maduell, 326 So.2d 820 (La.1976); Teachers' Retirement System of Louisiana v. Vial, 317 So.2d 179 (La.1975). We conclude that La. R.S. 3:266(21) is a statute specifically directed to the matter at issue and it is an exception to the Contractors Licensing Law found in La. R.S. 37:2150, et seq, which are statutes more general in character.
Finally, we note that LAFA and the Licensing Board have disputed for a number of years the issue as to whether LAFA can use its own public employees, equipment and materials in carrying out its own public work projects. We find the case of State Licensing Board for Contractors v. Louisiana State Department of Agriculture and Forestry, 588 So.2d 1268 (La. App. 1st Cir.1991), writ denied, 590 So.2d 598 (La.1992), which held that LAFA could not use its own employees, equipment and materials in carrying out its own public work projects, to be unpersuasive. This case was decided long before the adoption of La. R.S. 3:266(21), which makes it clear that LAFA now has express authority to use its own public employees in carrying out its own public work projects. The Department and LAFA, therefore, are entitled to the declaratory relief they requested and this judgment is hereby amended accordingly.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting partial relief to the Louisiana Department of Agriculture and Forestry and the Louisiana Agricultural Finance Authority is amended to apply La. R.S. 3:266(21) rather than La. R.S. 37:2157(A)(2) to the public work project in Monroe, and, therefore, to allow LAFA to use its own public employees, equipment and material in carrying out this public work project. As amended, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Defendant, Louisiana State Licensing Board for Contractors.
AMENDED, AND, AS AMENDED, AFFIRMED.
NOTES
[1] La. R.S. 37:2157(A)(2) provides:

There are excepted from the provisions of this Chapter:
Owners of property who supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or maintenance of any building, railroad excavation, project, development, improvement, plan facility, or any other construction undertaking, on such property, for use by such owner and which will not be for sale, rent, public use, or public assembly.
[2] La. R.S. 3:266(14) provides:

The authority (LAFA) shall have all the powers necessary to give effect to and carry out the purposes and provisions of this Chapter, including, in addition to all other powers granted by other provisions of this Chapter, the powers to:
Acquire or contract to acquire from any person, firm, corporation, municipality, federal or state agency, by grant, purchase, or otherwise, movable or immovable property or any interest therein; own, hold, clear, improve, lease, construct, or rehabilitate, and sell, invest, assign, exchange, transfer, convey, lease, mortgage, or otherwise dispose of or encumber the same, subject to the rights of holders of the bonds of the Authority, at public or private sale, with or without public bidding.
[3] Under La. R.S. 38:2211(A)(11), public work is defined as:

The erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity.
[4] La. R.S. 3:1605 provides:

The commissioner (commissioner of the Department of Agriculture and Forestry), through the commission (Louisiana Boll Weevil Eradication Commission), is authorized to suppress or eradicate the boll weevil in the state. The commissioner is authorized to cooperate with any agency of the federal government, any state, any other agency in the state or in the region, or any person engaged in growing, processing, marketing, handling cotton, or any group of such persons in programs to effectuate the purposes of this Part and may enter into written agreements, including cooperative endeavor agreements, to effectuate such purposes. Such agreements may provide for cost sharing, and for division of duties and responsibilities under this Part and may include other provisions generally to effectuate the purposes of this Part.
La. R.S. 3:1615(B)(2), in concurrence with La. R.S. 3:1605, provides:
Subject to appropriation, the monies in the fund (Boll Weevil Eradication Fund) shall be used for the following purposes:
To fund any and all costs related to the eradication of boll weevils, utilizing any or all powers granted to the Louisiana Agricultural Finance Authority (LAFA).
[5] La. R.S. 37:2150 provides:

The purpose of the legislature enacting this chapter is the protection of the health, safety, and general welfare of all those persons dealing with persons engaged in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperienced, unlawful, and fraudulent acts of contractors with whom they contract. Further, the legislative intent is that the State Licensing Board for Contractors shall monitor construction projects to insure compliance with the licensure requirements of this chapter.
[6] La. R.S. 37:2154(A)(4) provides:

No application (application for contractors license) may be considered from any state or local governmental body, including, without limitation, any agency of any such state or local governmental body including any corporation or other entity owned, controlled by any such state or local governing body.
[7] If a public work project will later be used by the public, the exemption found in La. R.S. 37:2157(A)(2) will not apply and LAFA will have to follow the Contractors Licensing Law by hiring a contractor in carrying out this project. In memorandum supplied to the trial judge, LAFA stipulated to the fact that this one facility in Monroe will be used by the public.