VICTORY, J.
We granted this writ application to determine whether the Louisiana Agricultural Finance Authority (“LAFA”) is exempt from the requirements of La R.S. 38:2211, et seq. (the “Public Bid Law”), and if so, whether by undertaking the public works at issue, LAFA is unlawfully undertaking works on behalf of the Louisiana Department of Agriculture and Forestry (the “Department”) and Bob Odom (the “Commissioner”), using" LAFA’s exemption from the Public Bid Law. After reviewing the record and the applicable law, we affirm the judgments of the lower courts and hold that LAFA is expressly exempt from the requirements of the Public Bid Law and that the public works projects undertaken by LAFA fit -within LAFA’s stated statutory purpose.
FACTS AND PROCEDURAL HISTORY
On November 22, 1999, Louisiana Associated General Contractors, Inc. (“LAGC”), filed a petition for declaratory judgment and permanent injunction, alleging that the defendants were required to comply with the Public Bid Law and that certain construction projects were undertaken by defendants in violation of that law.[1] The defendants filed a reconvention *92 al demand for declaratory judgment that LAFA as owner of property is authorized to carry out public works on its property, to do so utilizing public employees, equipment and materials, and to do so employing a bidding procedure different from that contained in the Public Bid Law, and that no further conduct is required of LAFA or the Department beyond that presently employed to exercise LAFA’s legislative authority; or if any further conduct is required of LAFA or the Department to lawfully exercise its legislative authority, a declaration of what that conduct is. The parties submitted the matter on stipulated facts and exhibits, which are summarized in the following paragraphs.
LAGC is a state-wide association of construction contractors which exists, inter alia, for the purposes of fostering, promoting, and protecting the common interests of its member contractors and competitive bidding under the Public Bid Law. The Commissioner exercises all functions of the state relating to the promotion, protection, and advancement of agriculture. La. Const. art. 4, § 10. LAFA was created by the legislature in 1983 and is a state agency whose members are appointed by the governor, which was placed into the Department and is administered by the Commissioner.
In 1980, the Department was housed in various facilities around the state outside of Baton Rouge and in fourteen different locations in Baton Rouge, almost all of which were rented facilities. In the mid-1980s, the State experienced, and the governor declared, a fiscal emergency. In response, defendants commenced an “Office Consolidation Project,” with the goal of consolidating the Department’s various offices and facilities notwithstanding the *93 limited funds available. Since the 1980s, public works have been carried out in a manner which has given rise to this legal controversy, specifically, whether one or more of the defendants can initiate and carry out public works in a manner and utilizing a bidding procedure that is different from the manner and bidding procedure contained in the Public Bid Law.
Specifically, the relevant public works are carried out utilizing equipment and materials acquired by LAFA and with LAFA utilizing a bidding procedure to acquire the equipment and materials that is different from the bidding procedure contained in the Public Bid Law. The relevant public works are carried out (a) utilizing mostly workers employed by the State and appointed, removed, assigned, and promoted by the Commissioner: (b) utilizing to a lesser extent, independent contractors engaged by LAFA utilizing a bidding procedure that is different from that bidding procedure found in the Public Bid Law; and (c) without utilizing general contractors except on occasions to supervise, superintend, and oversee the construction. The workers carrying out the relevant public works who are employed by the State are paid by the State’s uniform payroll system, regularly engaged on a full-time basis by the Department and temporarily assigned or cross-utilized by the Commissioner to LAFA to work on a part-time basis on the relevant public works. The relevant public works exceed $100,000.00 and are funded through public bond issues, by legislative appropriation, through use of the Boll Weevil Eradication Fund, or through the use of feed, fertilizer, and pesticide funds.
Phase One of the Office Consolidation Project involved the consolidation of the Department’s various rented offices in Baton Rouge into essentially one facility owned by the State. Upon completion of Phase One, LAFA leased the building to the Department, which relocated its personnel from the various rented offices across Baton Rouge into the new central headquarters building. Extra space in the building, intended for future growth of the Department, is currently rented by LAFA to other state agencies. In 1998, Defendants commenced Phase Two of the Office Consolidation Project, which involved consolidation of the Department’s mostly leased offices in those areas of the State outside of Baton Rouge into facilities owned by the State through LAFA, and also involved the acquisition of new space needed to house Louisiana’s boll weevil eradication program. Again, with the unanimous approval of the State Bond Commission, LAFA issued bonds, acquired immovable property in various locations across the State and constructed office facilities and other public works, which LAFA then leased to the Department for the Department’s use in performing its statutory duties and functions.
Most of the relevant public works, such as those described above, are carried out on immovable property that is owned by LAFA. Some of the relevant public works are carried out on immovable property that is leased by LAFA. For example, airplane hangers were erected at airports and are used to house and repair portions of the Department’s fleet of forest fire detection aircraft. Some of the relevant public works are carried out on immovable property that is owned by public entities other than LAFA. For example, a farmers market and an equestrian center were built for and in the City of Monroe pursuant to a “cooperative endeavor agreement” between LAFA and the City of Monroe in exchange for 250 acres of land within the city limits to house the Department’s district offices and facilities.
*94 Most of the relevant public works are used to house personnel of and/or to facilitate the functions of the Department.[2] Some of the relevant public works are used to house personnel of and/or to facilitate functions of other public entities.[3] Some of the relevant public works are used to facilitate the function of private entities.[4]
After considering the above stipulated facts and exhibits, the trial court issued the following judgment:
1. The law authorizing the Louisiana Agricultural Finance Authority to carry out public works with or without public bidding, more particularly, R.S. 3:266(14), is clear and unambiguous.
2. The law authorizing the Louisiana Agricultural Finance Authority to carry out public works, including R.S. 3:266(14), R.S. 3:266(21) and other statutes, created an express exception for the Louisiana Agricultural Finance Authority from the provisions of R.S. 38:2111, et seq.
3. The law authorizing the Louisiana Agricultural Finance Authority to utilize public employees to carry out public works, including R.S. 3:266(21), permits the Louisiana Agricultural Finance Authority to utilize employees of agencies other than the Louisiana Agricultural Finance Authority, including the Louisiana Department of Agriculture and Forestry.
4. The Louisiana Agricultural Finance Authority is designed and is authorized *95 to operate in concert and cooperation with the Louisiana Department of Agriculture and Forestry and with the Commissioner of Agriculture.
5. The relevant public works projects are being or have been constructed to house personnel and/or to facilitate the functions of the Louisiana Department of Agriculture and Forestry, and of other public or private entities, by promoting, protecting, assisting and advancing agriculture.
6. Promoting, protecting, assisting and advancing agriculture are purposes for which the Louisiana Agricultural Finance Authority was established.
7. The relevant public works that are being or have been carried out by the Louisiana Agricultural Finance Authority and the Louisiana Department of Agriculture and Forestry are fully authorized by statutory and constitutional authority, and the Louisiana Agricultural Finance Authority is authorized to carry out public works on its property, to do so utilizing public employees, equipment and materials, and to do so without employing the bidding procedure contained in R.S. 38:2211 et seq. or by employing a bidding procedure that is different from the bidding procedure contained in R.S. 38:2211 et seq., and no further acts or omissions are required of Defendants beyond those historically employed in order for the Louisiana Agricultural Finance Authority to exercise its legislative authority to carry out public works.
The court of appeal affirmed. Louisiana Associated General Contractors, Inc. v. Louisiana Dept. of Agriculture and Forestry, 03-2501 (La.App. 1 Cir. 12/17/04), 897 So.2d 699. We granted LAGC’s writ application to determine the res novo legal issues of whether the relevant statutes provide LAFA with an exemption from the Public Bid Law, and if so, whether the public works projects undertaken by LAFA fit within LAFA’s stated statutory purpose. Louisiana Associated General Contractors, Inc. v. Louisiana Dept. of Agriculture and Forestry, 05-C-0131 (La.5/13/05), 902 So.2d 999.
DISCUSSION

Is LAFA exempt from the requirements of the Public Bid Law?

“Louisiana’s Public Bid Law, set forth in La. R.S. 38:221[1], et seq., is a prohibitory law founded on public policy.” Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority, 04-0211 (La.3/18/04), 867 So.2d 651, 656; La. Associated General Contractors, Inc. v. Calcasieu Parish School Bd., 586 So.2d 1354, 1359 (La.1991). “Pursuant to the Public Bid Law, the legislature has specifically prescribed the conditions upon which it will permit public work to be done on its behalf or on behalf of its political subdivisions.” Id. “The statute was enacted in the interest of the taxpaying citizens and has for its purpose the protecting of them against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices.” Id. “A political entity has no authority to take any action which inconsistent with the Public Bid Law.” Id.
The Public Bid Law provides, that:
[a]ll public work[5] exceeding the contract limit as defined in this Section, including labor and materials, to be done by a *96 public entity[6] shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised, and no such public work shall be done except as provided in this Part.
La. R.S. 38:2212(A)(l)(a). Thus, pursuant to the Public Bid Law, the legislature has specifically prescribed the conditions upon which it will permit work to be done on its behalf or on behalf of its political subdivisions. La. Associated General Contractors, Inc., supra at 1362. As a public entity has no authority to take any action which is inconsistent with the Public Bid Law, any exceptions from the requirements of this prohibitory law must be express. See Arnold v. Board of Levee Com’rs of Orleans Levee Dist., 366 So.2d 1321 (La.1978) and Hall v. Rosteet, 247 La. 45, 169 So.2d 903 (1964) (both establishing the rule of law that any exemptions from the Public Lease Law, La. R.S. 41:1211, et seq., must be express); Martin v. Louisiana Stadium and Exposition Dist., 349 So.2d 349,354 (La.App. 4 Cir.1977) (exemptions from the Public Bid Law must be express).
As a public entity undertaking public works in excess of $100,000, LAFA would clearly be subject to the requirements of the Public Bid Law unless the legislature has expressly provided LAFA with an exemption. LAFA claims it is expressly exempt by virtue of several statutes, one of which is La. R.S. 38:2212(B) which provides:
Those contracts let by any public entity for public works estimated to cost in excess of the contract limit shall be advertised and let by contract to the lowest responsible bidder. Public works which are estimated to cost less than the contract limit may be undertaken by the public entity with its own employees. Nothing contained herein shall be construed as reducing those powers established by law in Chapter 3-B of Title 3 of the Louisiana Revised Statutes of 1950. (Emphasis added.)
Chapter 3-B of Title 3 of the Louisiana Revised Statutes of 1950 contains the “Louisiana Agricultural Finance Act,” (the “LAFA Act”) under which LAFA was created. The above emphasized language in the Public Bid Law was added in 1999, while Phase Two of the Office Consolidation Project was ongoing. Acts 1999, No. 787.
In the LAFA Act, which was enacted in 1983, the legislature made the following “legislative findings:”
A. The legislature hereby finds and declares that there exists in the state of Louisiana a serious shortage of capital and credit available for investment in agriculture, for domestic and export purposes, at interest rates within the financial means of persons engaged in agricultural production and agricultural expórts. In conjunction with the financial problems associated with the agricultural industry there exists a need to provide economic assistance to those individuals who wish to convert their *97 farming operation to the development of aquaeultural products of a seafood nature for domestic and export purposes. In addition, there exists a need to provide economic assistance to persons who wish to engage in mariculture projects. This shortage of available capital and credit is severe throughout the state, has persisted for a number of years, and constitutes a grave threat to the agricultural industry and to the health, welfare, safety, and prosperity of all residents of the state.
B. The legislature hereby finds and declares further that private enterprise and existing federal and state governmental programs have not adequately alleviated the severe shortage of capital and credit available at affordable interest rates for investment in agriculture or in the conversion to aquaculture or for investment in mariculture projects.
C. The legislature hereby finds and declares that it is a matter of grave public necessity that the Louisiana Agricultural Finance Authority be created and empowered to alleviate the severe shortage of capital and credit available at affordable interest rates for investment in agriculture, including buildings and related facilities used by the Department of Agriculture and Forestry to promote and assist agriculture and forestry within this state, and for the export of agricultural products, commodities, and services, and for capital investment in converting to aquaeultural farming, and for capital investment in mariculture projects by providing such capital and credit at interest rates within the financial means of persons and businesses engaged in agriculture and agricultural exports.
La. R.S. 3:262. The legislature has declared that the provisions of Chapter 3-B “being necessary for the welfare of the state and its residents, shall be liberally construed to effect the purposes thereof.” La. R.S. 3:282.
The “powers of authority” of LAFA are set out in La. R.S. 3:266 and include the following provisions relevant to this lawsuit:
The authority shall have all the powers necessary to give effect to and carry out the purposes and provisions of this Chapter, including, in addition to all other powers granted by other provisions of this Chapter, the powers to:
[[Image here]]
(14) Acquire or contract to acquire from any person, firm, corporation, municipality, federal or state agency, by grant, purchase, or otherwise, movable or immovable property or any interest therein; own, hold, clear, improve, lease, construct, or rehabilitate, and sell, invest, assign, exchange, transfer, convey, lease, mortgage, or otherwise dispose of or encumber the same, subject to the rights of holders of the bonds of the Authority, at public or private sale, with or without public bidding.
[[Image here]]
(21) Notwithstanding any other law, supervise and utilize public employees, equipment, and material in carrying out public work, including public work in furtherance of Formosan termite suppression.
La. R.S. 3:266. Subparagraph (21) was adopted in 1999, by Acts 1999, No. 18.
Thus, the first issue before us is whether La. R.S. 3:266(14) or (21), or La. R.S. 38:2112(B) provide LAFA an express exemption from the mandatory requirements of the Public Bid Law. This is strictly a matter of statutory interpretation and construction. The Civil Code sets out the rules of statutory construction used by this Court. “When a law is clear *98 and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” La. C.C. art. 9. “When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.” La. C.C. art. 10. “Laws on the same subject matter must be interpreted in reference to each other.” La. C.C. art. 13. Further, “[w]hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.” La. R.S. 1:4. Finally, the rules of statutory construction provide that, where two (or more) statutes deal with the same subject matter, they should be harmonized if possible; but, that, if there is a conflict, that statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. Esteve v. Allstate Ins. Co., 351 So.2d 117 (La.1977); State v. Maduell, 326 So.2d 820 (La.1976); Teachers’ Retirement System of Louisiana v. Vial, 317 So.2d 179 (La.1975).
LAGC first argues that La. R.S. 3:266(14) does not contain an express exemption from the Public Bid Law because it does not mention the “Public Bid Law” by name and where the legislature has given other public entities an exemption from the Public Bid Law, they have done so more expressly. See La. R.S. 39:1481[7], et seq. (exempting LAFA from the Professional, Personal, Consulting, and Social Services Procurement Law); La. R.S. 33:4263 A(5)(e) (providing that municipalities owning and operating revenue producing electric utilities may construct hydroelectric facilities “by negotiated contract without public advertisement or other limitation of the Public Bid Law”); La. R.S. 33:4175 C(3)(a) (providing that public power authorities may enter into certain contracts for the construction of certain power facilities “without application of the public contract laws”). We disagree and hold that while an exemption from the Public Bid Law must be express, no specific statutory language is required. See Arnold, supra (holding that the language granting the Levee Board “jurisdiction, power and authority to sell and lease ... lands ... under such terms and conditions and by such methods as said Board may deem proper” was sufficiently express to establish an exemption from public lease laws).
The language chosen by the legislature in 3:266(14) is “with or without public bidding.” The lower courts held that those words provided an express exemption from the Public Bid Law and applied to all of the powers listed in La. R.S. 3:266(14), not just the immediately preceding phrase “at public or private sale” as argued by LAGC. Specifically, the court of appeal held that “from the statute’s own words, LAFA has the power to ‘[a]cquire ...; ... construct ..., and sell ... [movable and immovable property], subject to the rights of holders of the bonds of the Authority, at public or private sale, with or without [public] bidding.’ ” 897 So.2d at 701. We agree and note that LAGC’s argument that “with or without public bidding” refers only to the phrase “at public or private sale” ignores the fact that there is clearly a comma between those two phrases and that negates the “general rule .... that relative and qualifying clauses are to be applied to the words *99 or phrase immediately preceding and are not to be construed as extending to or including others more remote.” State v. Burns, 29,632 (La.App. 2 Cir. 9/24/97), 699 So.2d 1179, 1181 (citing 82 C.J.S. Statutes, § 334, at 670, 671 (1963)). “There is a rule of statutory interpretation that the presence of a comma separating a modifying clause in a statute from the clause immediately preceding is an indication that the modifying clause was intended to modify all the preceding clauses and not just the last antecedent one.” Id.
This finding is further bolstered by other statutes that reinforce this view. La. R.S. 3:266(21) gives LAFA the power to “notwithstanding any other law, [to] supervise, and utilize public employees, equipment, and material in carrying out public work, including public work in furtherance of Formosan termite suppression.” The right to use public employees, equipment, and material is clearly contrary to the requirements of the Public Bid Law and as such enables LAFA to operate outside of its confines.[8]
In addition, in the Public Bid Law itself, LAFA’s exemption is reinforced in La. R.S. 38:2212(B), which states the general rule that public works contracts in excess of the contract limit [$100,000.00] must be advertised and let to the lower responsible bidder while contracts costing less than $100,000.00 may be undertaken by the public entity with its own employees. La. R.S. 38:2212(B) then goes on to provide that “[n]othing contained herein shall be construed as reducing those powers established by law in Chapter 3-B of Title 3 of the Louisiana Revised Statutes of 1950.” While this statute alone would not be enough to qualify as an express exemption from the Public Bid Law, given the language found in the LAFA act, specifically La. R.S. 3:266(14) and (21) and the broad powers given to LAFA in that Act, this statute certainly reinforces the legislature’s intention that LAFA is exempt from the Public Bid Law. We find it significant that LAFA is the only public entity expressly mentioned by name in the Public Bid Law as having powers which are not to be reduced by the Public Bid Law.[9] Contrary to LAGC’s assertions, obviously the exemptions and powers found in the LAFA Act concern the requirements of the Public Bid Law as that law specifically references LAFA’s powers granted by the LAFA and holds that those powers supercede the requirements of the Public Bid Law. La. R.S. 38:2212(B).[10]
*100 The legislature, which adopted the public bidding statutes, indisputably has the power to create exceptions to or exemptions from those statutes. As this Court has stated, “in the exercise of legislative power, the legislature may enact any legislation that the state constitution does not prohibit.” Unwired Telecom, Corp. v. Parish of Calcasieu, 03-0732 (La.1/19/05), 903 So.2d 392, 403. The Louisiana Revised Statutes are replete with statutes that appear to allow a multitude of public bodies to take various actions without public bidding[11] or utilizing public bidding processes that differ from that set forth in La. R.S. 38:2211 et seq. by allowing public bodies to carry out certain public works with their own workers,[12] or waiving advertising requirements,[13] or that otherwise appear to provide an exemption from public bidding laws generally or the Public Bid Law specifically under certain circumstances.[14] The Public Bid Law itself contains numerous exemptions.[15]
*101 Not only has the legislature chosen to exempt LAFA from the Public Bid Law, it has also chosen to exempt it from another statute dealing with public bidding and contracting, namely the Professional, Personal, Consulting, and Social Services Procurement Law, La. R.S. 39:1481, et seq. In the same legislative act that created LAFA, La. R.S. 39:1482(E) was amended to expressly exempt LAFA from the Professional, Personal, Consulting, and Social Services Procurement Law:
This Chapter shall not apply to any contract or like business agreement to purchase professional, consulting, or contract services required or utilized by the Louisiana Agricultural Finance Authority authorized under the provisions of Chapter 3-B of Title 3 of the Louisiana Revised Statutes of 1950.
Acts 1983, No. 96, § 4; La. R.S. 39:1482(E).
In addition, one appellate court has also found that LAFA is exempt from the Contractors Licensing Law, La. R.S. 37:2150, et seq. In Louisiana Dept. of Agriculture and Forestry v. Louisiana State Licensing Bd. for Contractors, 36,694 (La.App. 2 Cir. 1/29/03), 837 So.2d 726, the Second Circuit held that La. R.S. 3:266(21), which was enacted in 1999, and which, as discussed above, allows LAFA to use public employees, equipment, and material in carrying out public work, operated as an exemption from the Contractors Licensing Law, La. R.S. 37:2157(A)(2). That court found, in a ease challenging many of the same public works projects as those involved in this case, that “La. R.S. 3:266(21) is a statute specifically directed to the matter at issue and it is an exception to the Contractors Licensing Law found in La. R.S. 37:2150, et seq., which are statutes of more general character.” 837 So.2d at 733.
Thus, under our general rules of statutory construction, the provisions of the LAFA Act and the Public Bid Law provide LAFA with an express exemption from the requirements of the Public Bid Law. These laws are clear and unambiguous and their application does not lead to any absurd consequences. When read together, the Public Bid Law specifically states that it must not be construed to reduce the powers given to LAFA under the more specific LAFA Act. The LAFA Act, specifically La. R.S. 3:266(14) and (21), gives LAFA the power to construct and improve movable and immovable property without public bidding and to use public employees, equipment, and machines in carrying out public works.
Is LAFA lawfully undertaking public works projects on behalf of the Department using LAFA’s exemption from the Public Bid Law?
The second issue for our consideration is whether the public works projects undertaken by LAFA on behalf of the Department and the Commissioner fit within LAFA’s legislatively authorized statutory purpose.
As a matter of law, LAFA was created as a subsidiary of and is designed to operate in concert and in cooperation with the Department and the Commissioner. See generally Louisiana Revised Statutes Title 36, “The Executive Reorganization Act.” LAFA is “created within the Department” and “established within the Department,” [16] and is unquestionably part of the Department. Because LAFA is part of the Department, pursuant to the Executive Reorganization Act, La. R.S. 36:1, et seq., the Department is “responsible for performing the functions of’ LAFA. La. R.S. 36:621(B) (“The Department of Agriculture *102 and Forestry ... shall be responsible for performing the functions of ... the agencies transferred into this department in accordance with the provisions of this Title”). The Commissioner is the constitutional head of the Department pursuant to Article 4, § 10, and is expressly mandated by statute to “administer and enforce” the LAFA law and to “employ such personnal as may be necessary to administer and enforce” the LAFA law. La. R.S. 3:265(C); La. R.S. 36:624(B)(l)(a)(iv); La. R.S. 36:802. The Commissioner also has the authority to employ, appoint, remove, assign, and promote such personnel as is necessary for the efficient administration of the Department and the agencies transferred to it, such as LAFA, and all such employees are under his supervision. La. R.S. 36:624(B); 3:265(C).
However, the fact that LAFA is part of the Department and is governed by the Commissioner does not mean that the Department and the Commissioner can exercise all of their governmental functions involving construction using LAFA’s exemption, as clearly there is no express exemption for the Department or the Commissioner and their powers and authorities are broader than those of LAFA. In order for the Department and Commissioner to be validly undertaking these functions through LAFA using LAFA’s exemption to the Public Bid Law, the construction projects must be undertaken pursuant to LAFA’s statutory powers and authority.
The powers and authority of LAFA are found in the LAFA Act, some of which have been cited above and the relevant portions of which will be discussed here. La. R.S. 3:262(C) provides:
C. The legislature hereby finds and declares that it is a matter of grave public necessity that the Louisiana Agricultural Finance Authority be created and empowered to alleviate the severe shortage of capital and credit available at affordable interest rates for investment in agriculture, including buildings and related facilities used by the Department of Agriculture and Forestry to promote and assist agriculture and forestry within this state ... (emphasis added).
In addition, La. R.S. 3:270, dealing with bonds of LAFA, provides in pertinent part:
A. The authority is hereby authorized and empowered to issue.. “bonds”, to provide funds for and to fulfill and achieve its authorized public functions or corporate purposes, as set forth in this Chapter, including but not limited to ... the acquisition, construction, renovation, and equipping buildings and related facilities for use by the Department of Agriculture and Forestry in connection with promoting and assisting agriculture and forestry within this state, ..., and all other purposes and expenditures of the authority incident to and necessary or convenient to carry out its public functions or corporate purposes. (Emphasis added.)
By virtue of this section, the legislature has set out that LAFA is authorized to issue bonds to provide funds for and to fulfill its “authorized public functions or corporate purposes, as set forth in this Chapter.” Importantly, the legislature then includes within LAFA’s “authorized public functions or corporate purposes, as set forth in this Chapter,” “the acquisition, construction, renovation, and equipping buildings and related facilities for use by the Department in connection with promoting and assisting agriculture and forestry within this state.” La. R.S. 3:270. Thus, while R.S. 3:270 is essentially provides LAFA with a financing vehicle, it also provides that the “acquisition, construction, renovation, and equipping build *103 ings and related facilities” is a function of LAFA.
Finally, the powers of LAFA are specified in La. R.S. 3:266 and the relevant portions pertaining to the construction projects at issue and which clearly allow direct participation by LAFA in construction projects, are as follows:
LSA-R.S. 3:266
The authority shall have all the powers necessary to give effect to and carry out the purposes and provisions of this Chapter, including, in addition to all other powers granted by other provisions of this Chapter, the powers to:
[[Image here]]
(5) Make and execute contracts and all other instruments necessary or convenient for the exercise of its powers and functions under this Chapter with any federal or state governmental agency, public or private corporation, lending institution, or other entity or person.
[[Image here]]
(14) Acquire or contract to acquire from any person, firm, corporation, municipality, federal or state agency, by grant, purchase, or otherwise, movable or immovable property or any interest therein; own, hold, clear, improve, lease, construct, or rehabilitate, and sell, invest, assign, exchange, transfer, convey, lease, mortgage, or otherwise dispose of or encumber the same, subject to the rights of holders of the bonds of the Authority, at public or private sale, with or without public bidding.
[[Image here]]
(20) Issue revenue bonds for the purpose of acquiring, constructing, renovating, and equipping buildings and related facilities for use by the Department of Agriculture and Forestry in connection with the promotion and assistance of agriculture and forestry within this state. The bonds shall be authorized and issued by one or more resolutions adopted by a majority vote of the members of the authority and shall be payable solely from the income and revenues as set forth in the resolution authorizing the issuance of the bonds.
(21) Notwithstanding any other law, supervise and utilize public employees, equipment, and material in carrying out public work, including public work in furtherance of Formosan termite suppression.
We agree with the court of appeal’s analysis which held that LAFA is more than a financing vehicle:
[La. R.S. 3:262(C) ] does not limit LAFA to the creation of financing, such as the issuance of bonds, for use only by others. Again, drawing directly from the statutory language, LAFA was created to provide “capital ... for investment in agricultural, including buildings and related facilities used ... to promote and assist agriculture ...” La. R.S. 3:262 C. This authority to do more than merely provide financing is affirmed by La. R.S. 3:266(7,), (8), (14) & (21), which allow LAFA to take possession of property, to insure it properties, to construct, own, encumber, and sell property, and to use public employees in the construction of al its public works projects. (Cites omitted).
897 So.2d at 702.[17]
CONCLUSION
By the enactment of the LAFA Act and the express exemptions from the Public *104 Bid Law found in La. R.S. 3:266(14), 3:266(21), and 38:2212(B), the legislature has chosen to exempt LAFA from the requirements of the Public Bid Law. Further, according to the provisions of the LAFA Act, the legislature has given LAFA the power to carry out construction projects on behalf of the Department.
DECREE
For the reasons stated herein, the judgments of the lower courts are affirmed.
AFFIRMED.
JOHNSON, J., concurs.

. Specifically, LAGC seeks that declaratory judgment be rendered decreeing:
A. That Bob Odom, the Louisiana Department of Agriculture and Forestry and the *92 Louisiana Agricultural Finance Authority are each public entities and each is bound by and required to comply with the Public Bid Law;
B. That defendants are required to submit any and all public works projects which involve labor, equipment, materials and overhead in excess of $100,000 to public competitive bidding under the Public Bid Law and to award the contract for such public works project as specified by the Public Bid Law;
C. That the construction projects of Department, LAFA and/or Odom described in the above and foregoing petition and referred to as the Monroe, Hammond and Laccasine projects are such as to be mandated for award under public competitive bidding as specified by the Public Bid law and that all actions of Department, LAFA and Odom in such construction, including all contracts or obligations resulting from such transactions, are null and void, ab initio, and
D. That the purchase of materials, supplies and contracts entered into or transactions or obligations incurred for construction of public works by defendants, which are herein declared contrary to the provisions of the Public Bid Law, are herewith declared null and void, ab initio and all contracts for labor, materials, equipment, supervision or supplies in connection with construction projects at Monroe, Hammond and Laccasine be in the same and are hereby nullified.
LAGC seeks a permanent injunction as follows:
That a permanent injunction be issued herein restraining and enjoining Department, LAFA and Odom, individually or in concert, from undertaking the construction of public works (as the same is defined by the Public Bid Law) for defendants, or any one of them, or for anyone else, using the employees of any of the defendants or equipment, materials or supplies of any of the defendants wherein such public works involve in excess of $100,000 in labor, materials, equipment and including overhead and said defendants are further enjoined from performing such public work in any means or fashion except by and under the requirements of the Public Bid Law which requires public competitive bidding and award of the contract to the lowest responsible bidder who had bid in accordance with the plans, specifications and contract documents as advertised.

.These include the following types of public works: automotive and equipment mechanic, maintenance and welding shops used for the installation and repair of the Department's equipment and to fabricate special needed equipment like special tractor plows used in fighting forest fires and truck beds used to carry fire fighting tractors to the location of forest fires; radio installation and repair shops used to maintain coordination and communication between ground field operations, air operations, and offices similar to and including boll weevil eradication activities, forest fire detection and suppression, law enforcement activities related to forest arson detection and apprehension, animal theft detection and apprehension activities, and other like activities; tractor storage sheds used to house tracts and heavy equipment used in forest fire fighting and other agricultural activities; seed and seedling storage coolers used to store seeds and seedlings in Louisiana's reforestation program; water pump houses used to provide water for irrigation systems servicing tree farms in Louisiana's reforestation program; pesticide and fertilizer storage buildings used to house pesticides and fertilizers used in Louisiana's boll weevil eradication program and in Louisiana’s reforestation program; tree seedling nursery buildings used in Louisiana's reforestation program to facilitate reforestation activities; tree nursery irrigation systems used to provide water for irrigating tree farms in Louisiana’s reforestation program; laboratories for testing the quality and potential productivity of seeds, water, grain, pesticides, fuels, fertilizers, and insecticides used by Louisiana farmers to produce food and fiber; vehicle and heavy equipment body and paint shops used to repair and paint vehicles and heavy equipment on an as needed basis and on a preventative maintenance basis; carpentry shops for fabricating and maintaining wooden furnishings and building; paint shops used to apply coating to all movable equipment needing same; airplane hangar facilities and airplane repair shops used to house and maintain the fleet of aircraft used in aerial detection of forest fires and management of forest fire suppression activities; and office facilities for workers engaged in the described and other activities of the Department.

. These include the following public works: rail transportation and loading facilities, pursuant to a "cooperative endeavor agreement,” for sugar cane leaving the farm following harvest and en route for further processing, and the farmers market and equestrian center in Monroe.

. These include the following public works: rail transportation and loading facilities for sugar cane leaving the farm following harvest and en route for further processing.

. "Public work” means the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity. La. R.S. 38:2211(A)(12).

. “Public entity” means and includes the state of Louisiana, or any agency, board, commission, department, or public corporation of the state, created by the constitution or statute or pursuant thereto, or any political subdivision of the state, including but not limited to any political subdivision as defined in Article VI of Section 44 of the Constitution of Louisiana, and any public housing authority, public school board, or any public officer whether or not an officer of a public corporation or political subdivision. "Public entity” shall not include a public body or officer where the particular transaction of the public body or officer is governed by the provisions of the model procurement code. La. R.S. 38:2211(A)(11).

. La. R.S. 39:1481 provides:
This Chapter shall not apply to any contract or like business agreement to purchase professional, consulting, or contract services required or utilized by the Louisiana Agricultural Finance Authority authorized under the provisions of Chapter 3-B of Title 3 of the Louisiana Revised Statutes of 1950.

. We reject LAGC’s argument that "including” in La. R.S. 3:266(21) is a limiting phrase and limits the public works to Formosan termite suppression work. It more likely was intended to include Formosan termite suppression into the broader concept of public work.

. We note that the only other public entity expressly mentioned in La. R.S. 38:2212 by name and authorized to undertake public works projects with or without public bid are publicly owned utilities in certain instances. La. R.S. 38:2212(E).

. Further evidence of the meaning of La. R.S. 3:266(14), although certainly not controlling, is the fact that in the 2005 Regular Session, Senate Bill No. 43 was introduced by Senator Cain seeking to amend La. R.S. 3:266(14). The Bill sought to strike the key phrase "with or without” from the phrase "with or without public bidding” and replace it with "in compliance with public bidding requirements set forth in Part II in of Chapter 10 of Title 38 of the Louisiana Revised Statutes of 1950.” Senate Bill 43, 2005 Regular Session. This bill was referred to the Committee on Senate and Governmental Affairs on April 25, 2005 and apparently no action has since been taken. However, we point out that the Legislative Digest explaining Senate Bill 43 noted:
“Present law provides for the Louisiana Agricultural Finance Authority to acquire movable or immovable property and' to own, hold, clear, improve, lease, construct, *100 rehabilitate or dispose of property with or without complying with the public bid law normally required for public contracts. Proposed law retains present law but requires the Louisiana Agricultural Finance Authority to comply with the public bid law.”

. Including but not limited to: La. R.S. 3:266(14) (LAFA); 9:1102.2 (deep-water port commissions); 30:142(c), 30:144(c) (State Mineral Board regarding in-kind gas royalties and royalty crude oil under certain circumstances); 33:4699.1 (City of Lake Charles regarding lakefront development); 33:7615(D) (new community development corporations); 40:440(A)(3)(a) (local housing authorities); 40:600.6(15) (Louisiana Housing Finance Authority); 47:8015(D) (tax increment development corporations regarding the sale, lease or transfer of real property "without public bidding or public sale”).

. Including but not limited to: La. R.S. 48:260 (Louisiana Department of Transportation and Development); 33:3818.1(c) (La-fourche water district); 34:298(A)(2) (Lafayette Economic Development Authority); 34:333.8(A) (Abbeville Harbor and Terminal District); 34:334.7 (Vinton Harbor and Terminal District); 34:1355 (Plaquemines Port Harbor and Terminal District); 34:2108 (West Calcasieu Port District); 34:3227 (Mer-mentau River, Harbor and Terminal District); 33:3356 (municipal street improvements in municipalities of more than 500 population); 33:3403 (municipal street improvements in municipalities of more than 1000 population); 33:3423 (municipal street improvements in municipalities of more than 1000 and less than 200,000 population).

. Including but not limited to: La. R.S. 38:2113 (all irrigation districts); 33:4263 ("Any municipality owning and operating a revenue producing electric utility ... or any public power authority created by any such municipality for hydroelectric and related transmission facilities;”) 33:4175(C)(3)(a) (public power authorities created or ratified pursuant to this section and/or Act No. 425 of the 1975 Regular Legislative Session).

. Including but not limited to: La. R.S. 33:4263(5)(e) ("Any municipality owning and operating a revenue producing electric utility ... or any public power authority created by any such municipality”); 53:151 (political subdivisions or public agencies of Louisiana in connection with war or national defense); 33:130.52 (local governmental subdivisions authorized to create, develop, and finance or assist in the creation, development, and financing of industrial park projects); 33:4169(D) ("Any municipal corporation, parish, or sewerage or water district” operating a sewerage system may "contract with any private company”); 33:4175(C)(3)(a) ("municipality having a population in excess of four hundred thousand [which] ... create[s] a public power authority as a political subdivision”).

. Including but not limited to: La. R.S. 38:2212(A)(l)(a) (public works contracts less than the contract limit of $100,000); 38:2212(B) (LAFA); 38:2212(D) (extreme public emergency); 38:2212.1(E) (purchases made from the federal General Services Administration supply schedules); 38:2212.1(G) (agreements between public hospitals and qualified group purchasing organizations for the purpose of obtaining bids).

. La. R.S. 3:264(A); La. R.S. 36:629(K).

. Associated General Contractors of America v. Police Jury of Pointe Coupee Parish, 225 So.2d 300 (La.App. 1 Cir.1969), wherein the First Circuit held that the Pointe Coupee Par *104 ish Policy Jury could not avoid complying with the Public Bid Law by using the Department of Highways' maintenance employees to construct a bridge necessary to complete a Policy Jury project, is distinguishable. In this case, LAFA is not only a department within the Department, but it is also directly empowered to construct buildings and related facilities used by the Department to assist agriculture and forestry within this State.